OSCAR ANDERSON, Appellee, v. UNITED STATES RAILROAD AD-
MINISTRATION et al., Appellants.

**DAMAGES:**  Measure of Damages—Destruction of Property.  When
1  personal property is practically destroyed, the damages are meas-
ured by the difference between the value immediately before and
immediately after the injury.

RAILROADS: *Accidents at Crossings—Obstructing View With Cars.*
2  The placing of cars upon a sidetrack so as to obstruct the view of a crossing will not, *in and of itself,* constitute such negligence as will support a recovery of damages.

*Appeal from Benton District Court.*—B. F. CUMMINGS, Judge.

JUNE 23, 1922.

ACTION to recover damages for injury to an automobile owned by plaintiff, caused by collision between the automobile, driven by the wife of plaintiff, and one of the trains of the Chicago, Rock Island & Pacific Railway Company, under the operation of the director general of railroads, in the town of Garrison, Iowa, on the 29th day of July, 1919. The jury returned a verdict in favor of plaintiff for $1,000, and judgment was entered thereon. Defendant appeals.—*Reversed and remanded.*

*G. W. Burnham, J. G. Gamble,* and *A. B. Howland,* for appellants.

*Kirkland & White,* for appellee.

ARTHUR, J.—While the automobile in question was being driven across the railroad track in the town of Garrison, it was struck by one of defendant's trains, and sustained the damages sued for. Two grounds of negligence were alleged, and both were submitted to the jury: (1) That the defendant failed to blow the whistle or ring the bell, or give any signal of the approach of the train at the crossing; and (2) that the defendant had blocked the highway with box cars, which entirely obscured the view of the driver of the automobile.

The tracks of the Rock Island Railroad Company entering the town of Garrison run substantially east and west. One block east of the depot is a public highway crossing, leading south across the railroad tracks. Crossing this highway are three tracks. Between the first track and the second track, the distance was 18 feet. From the middle track or stock track to the main track was 20 feet. North of the tracks and east of the

highway is a coal chute, 165 feet wide and 106 feet long. Still west of the coal shed and north of the tracks is a canning factory building, there being an alleyway between the coal shed and the canning factory building. From a distance 100 feet north of the crossing to the point of the accident, the ground is substantially level. There is a switch track from the main line to the second track or stock track. East from the crossing, the track is straight for approximately 50 rods.

Plaintiff was the owner of a Jackson 8-cylinder car. Plaintiff's wife, on the morning of July 29, 1919, was driving this car. She drove into Garrison from the south over the crossing in question, between 8 and 9 o'clock in the morning. She returned from town, driving the automobile, some time after 10 o'clock in the forenoon. When she crossed the tracks entering town, there were some box cars standing on the second track, and when she crossed the tracks leaving town, when the accident in question occurred, the cars on the stock track were in the same position as when she drove into town. On her return, driving from the north, because of the coal chutes, the canning factory, and the cars standing on the stock track, the main-line track to the east was hidden from her view. She was driving from 5 to 10 miles an hour. Mrs. Mullinex, her aunt, was sitting on her right. She drove across the first track and the second track, on which second track stood a box car which projected into the road somewhat, and attempted to pass over the third track. The automobile was struck by the engine of the train in question, about the center of the automobile. The automobile received injury, for which this suit was brought to recover. The train was moving about 15 miles per hour. The canning factory was not running. There were no obstructions whatever to the west side of the crossing. When Mrs. Anderson was driving over the crossing, a section hand, who was standing south of the crossing when the accident happened, about 20 feet from the point where the accident occurred, saw the automobile coming from the north on the crossing, and tried to have it stopped. He testified that, when he first saw the automobile and tried to stop them, the automobile was about 6 or 7 feet north of the first or north track. He said: "I raised up my

hands and said 'Hold'—just that very way, twice or three times.'' He further said:

''I was standing right in the middle of the track, and I had to step off the main line to let the passenger train by, because it was so close I would have got killed. I was waiting there, and I seen this automobile coming, and I tried to stop them before the train would hit them. I held up both hands, and I said, 'Hold on there.' I said it two or three times. The automobile did not stop. It did not slow down.''

Mrs. Anderson testified that she heard the alarm given by Patton just as she passed the box car which was standing on the second track; that Patton holloed, ''Oh, the cars, the cars,'' or something to that effect.

Mrs. Esther Mullinex, who was riding with Mrs. Anderson, testified:

''We were on the track with the automobile,—the second track, I think,—when I heard somebody shout, 'Oh, the cars, the cars.' ''

Paul Zimmer, witness for plaintiff, testified that the automobile was about on the first track, when he heard somebody shout to the occupants of the car. Zimmer also testified that there were some box cars on the first track and some on the second track, which extended out into the public highway; that a car on the second track was farthest out in the highway; that the automobile was right on the first track, just east of the coal shed, when he heard somebody shout.

There is conflict in the evidence as to whether the bell was rung.

Defendant moved for a directed verdict, at the close of the plaintiff's evidence and at the close of all the evidence, which motions were overruled by the court.

Errors relied on for reversal are:

''(1)   The court erred in overruling defendant's motion to direct a verdict for the defendant, made at the close of all the evidence.

''(2)   The court erred in refusing defendant's requested Instruction No. 6, and erred in giving Instruction No. 8.

''(3)   The court erred in submitting to the jury the issue

as to negligence in placing box cars on a siding so as to obstruct the view of the track.

"(4)   The court erred in refusing to give defendant's requested Instruction No. 2.

"(5)   The court erred in refusing to give defendant's requested Instruction No. 8."

We will consider the assignments of error in reverse order.

Assignment No. 5, complaining that defendant's requested Instruction No. 8, as to measure of damages, was not given, is without merit.   The court's Instruction No. 13 gave the correct

1. DAMAGES: measure of damages: destruction of property.

measure of damage where the automobile is practically destroyed, as in this case: that is, the difference between the value of the automobile immediately before the happening of the accident and the value of the same immediately after the accident, as shown by the evidence. *Pugh v. Queal Lbr. Co.*, 193 Iowa 924.

We think it was not error to refuse the requested Instruction No. 2, to the effect that both the plaintiff and the defendant had the right to use the crossing in question, and that the right of the plaintiff was subject to the qualification that, if the automobile and train approached the crossing at the same time, so that there was probability of danger of collision if both proceeded, then it was the duty of the driver of the vehicle to yield precedence to the train, and if the driver failed to do so, the plaintiff was chargeable with negligence, and could not recover. Moreover, the thought contained in the requested instruction was sufficiently presented in the instructions given.

Assignment No. 3 charges that the court erred in submitting to the jury, as a specific ground of negligence, "that the defendant had so placed box cars that they extended out into the

2. RAILROADS: accidents at crossings: obstructing view with cars.

public highway to such an extent that they entirely obstructed the view of the driver of the automobile toward the east, the direction from which the train was coming, until she was almost upon the main track of the defendant's railroad, upon which said passenger train was being operated." This assignment of error is well taken. The court submitted this alleged ground of negligence as a particular and distinct ground of neg-

ligence in Instruction No. 5, and in Instruction No. 11 permitted the jury to find that such ground of negligence was the proximate cause of the injury to plaintiff's automobile. We announced in *Bruggeman v. Illinois Cent. R. Co.*, 154 Iowa 596:

"That the placing of freight cars upon a sidetrack so as to obstruct the view of a crossing would not be deemed as an independent ground of negligence is too plain to require argument."

See, also, the authorities cited in the *Bruggeman* case. The authorities are practically uniform on this question. In the *Bruggeman* case, however, we held that this particular ground of negligence was not, in fact, submitted to the jury. But here we have the issue of negligence in placing box cars so as to obstruct the view of the traveler submitted to the jury, not as an item of evidence for consideration, but as an independent ground of negligence, upon which the jury was entitled to find in favor of the plaintiff.

There was sharp conflict in the evidence as to the only other ground of negligence charged and submitted: failure to ring the bell. Under the instructions of the court, the jury may have found against appellant on the issue as to the ringing of the bell, and found in favor of the appellee upon the other ground: that is, negligence in placing box cars on the siding, so' as to obstruct the view of the track. It was competent for plaintiff to show all the conditions surrounding the crossing, as bearing upon the degree of care required to be exercised by the defendant, and also by the plaintiff. But in view of our prior holdings, the soundness of which we do not question, we hold that the trial court committed error in submitting to the jury the issue of negligence in placing box cars near the crossing, as an independent ground of negligence and basis of recovery; and we must hold such error prejudicial in the instant case.

Because of the error above pointed out, the judgment of the trial court must be reversed, and the case remanded for another trial. In this situation, it is not necessary, and we do not deem it expedient, to discuss the other error assigned, namely, that "the court erred in overruling defendant's motion to direct a verdict for defendant, made at the close of all the evidence."

Because of the error above pointed out, the judgment of the trial court must be and is reversed, and the case is remanded.— *Reversed and remanded.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.