**Marilyn K. FRITZ, et al., Plaintiffs,**

v.

**Rex A. PARKISON, Richard L. Parkison, and Dallas County, Iowa, Defendants.**

**Cindy LUDWIG, et al., Plaintiffs,**

v.

**DALLAS COUNTY, Iowa, Rex A. Parkison, and Richard L. Parkison, Defendants.**

**DALLAS COUNTY, Iowa, Appellant,**

v.

**Eugene NORTON and Doris J. Norton, Appellees.**

**No. 85–1499.**

Supreme Court of Iowa.

Dec. 17, 1986.

Carlton G. Salmons of Austin and Gaudineer, Des Moines, for appellant.

Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

The question here is whether landowners whose property abuts a curve in a rural road are potentially liable in tort when trees growing on their property limit the sight distance of drivers whose vehicles collide on the curve.

The collision occurred July 3, 1983, on a Dallas County gravel road. At that point an east-west road terminates at its juncture with a north-south road. The main traveled way is apparently along the east-north route, evidenced by a separate, gradual curve constructed north of the actual "T" intersection of the two roads.

Kenneth Ludwig, accompanied by several passengers, was operating his auto northwesterly into this curve. Rex A. Parkison, driving a pickup owned by Richard L. Parkison, was proceeding southeasterly into the curve when the vehicles collided. Various plaintiffs associated with the Ludwig car brought action in Dallas County against the Parkisons and Dallas County. Other plaintiffs associated with the Ludwig car brought action against the same defendants in Guthrie County, where the two cases eventually were consolidated.

All plaintiffs alleged Dallas County failed to trim vegetation on the inside of

the curve obstructing the vision of each driver of the colliding vehicles.

In the Dallas County suit that county brought a third-party claim against Eugene and Doris Norton, owners of the land lying to the north and east of the curve where the collision occurred. For convenience we will refer to Eugene Norton (Norton) as the sole third-party defendant. Dallas County sought contribution or indemnity, alleging trees, brush, and shrubs growing on Norton's land blocked the view of each oncoming motorist and Norton was liable for failing to remove the sight distance obstruction posed by this vegetation.

Norton answered and, following discovery, filed a motion for summary judgment. Norton asserted "[a]s a matter of law, there does not exist a cause of action against a property owner such as [Norton] on the grounds alleged by Dallas County." Dallas County resisted. Trial court entered judgment for Norton and dismissed the county's third-party petition. Dallas County appealed and we now affirm.

I. At the outset we parenthetically observe that our consideration of this case has been aided by excellent briefs and oral arguments submitted by counsel for both Dallas County and Norton. There is no dispute relating to our standard for reviewing district court's summary judgment. To prevail, Norton must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank*, 360 N.W.2d 81, 83–84 (Iowa 1984).

Nor is there any dispute between these parties regarding the relevant facts. Norton's land abutted the curve. The terrain in the area was fairly level. But for the trees growing on Norton's land, motorists approaching the curve from the north and from the east would be able to see each other for a longer period of time before meeting. Limbs on a few old trees growing on Norton's land overhung the road's right-of-way line, but not the traveled portion of the curve. These trees existed long before Norton owned the property. The few fruit trees he had planted were small and grouped farther from the road.

II. The parties also agree that summarily concluding Norton had no duty or obligation to trim or remove the trees from his property would "merely … state a result, a conclusion that [motorists'] interests are or are not entitled to legal protection against [Norton's] action[s] or lack thereof." *Weber v. Madison*, 251 N.W.2d 523, 526 (Iowa 1977) (quoting *Wittrup v. Chicago & Northwestern Ry.*, 226 N.W.2d 822, 823 (Iowa 1975)). Both parties concede that this court, applying logic and sound reason, must first identify and balance various policy considerations relevant to a determination whether, in these circumstances, the law should recognize a duty of reasonable care running from the landowner to the motorist. *Id.*

Implicated in this case are two well-developed and clearly recognized public policies. First, in light of our increasingly mobile society, highways must be kept free from obstructions and hazards. Recognizing this important public policy, we have at various times imposed liability against individuals responsible for allowing a highway to become obstructed or hazardous. *See Weber*, 251 N.W.2d at 528 (geese allowed to wander on highway); *Hawkeye-Security Insurance Co. v. Lowe Construction Co.*, 251 Iowa 27, 31, 99 N.W.2d 421, 424 (1959) (dirt, clay, and mud dropped on highway); *Kehm v. Dilts*, 222 Iowa 826, 829, 270 N.W. 388, 390 (1936) (leaving a five to eight-inch hump in highway); *Stewart v. Wild*, 196 Iowa 678, 683, 195 N.W. 266, 269 (1923) (hog wandering onto highway); *see also* Iowa Code §§ 319.1–.15 (1983) (Obstructions in Highways). In each of these cases, the traveled way actually was obstructed and in several of them the hazard presented was sudden and unexpected.

By contrast, in this case, Norton's trees did not physically obstruct or in any way intrude upon the traveled portion of the road. Rather, the trees were located off the right-of-way. They neither directly impeded travel nor constituted any kind of latent condition; for example, a rotten limb

that without warning might fall across the road or onto a passing vehicle. *See Hensley v. Montgomery County,* 25 Md.App. 361, 334 A.2d 542 (1975); *Taylor v. Olsen,* 282 Or. 343, 578 P.2d 779 (1978). While Norton's trees may have required drivers to proceed with some additional degree of caution, the trees could not reasonably have been expected to pose any significant threat to motorists operating their vehicles in a reasonably prudent manner, and clearly could not be characterized as an unexpected occurrence like a falling limb or a gaggle of geese. It is equally plain the primary responsibility for insuring reasonably safe highways is not imposed on abutting property owners.

The second policy implicated by this action is a well-established state goal to encourage the growth and cultivation of trees and discourage their wanton destruction. This policy, recognized by this court in the late nineteenth century, *see Everett v. City of Council Bluffs,* 46 Iowa 66, 67 (1877); *Bills v. Belknap,* 36 Iowa 583, 586 (1873), later motivated the adoption of a statute recognizing "the contribution of trees to the beauty and economic welfare" of the state. Iowa Code § 186A.1 (1983) (establishing Arbor Day and Arbor Week).

Other protective legislation authorizes an award of treble damages against individuals who willfully injure a tree located on another's property. *Id.* § 658.4. Ornamental trees, fruit trees, and hedges located beyond the highway right-of-way are not to be condemned even if they obstruct highway ditches or drains. *Id.* § 460.13. Further, maintenance crews are not allowed to remove trees along a highway unless they materially obstruct the highway. *Id.* § 314.7. Finally, although the legislature has created a private cause of action for nuisance with respect to trees that create a health, safety, or fire hazard in any city, *id.* §§ 657.1–.2, and has provided that billboards and advertising signs located on public and private property throughout the state may when necessary be declared public nuisances, *id.* §§ 319.10, 657.2, the legislature has enacted no similar statutes directed toward rural area trees. While this absence of legislative mandate would not prevent our recognizing a common-law duty, *Wittrup,* 226 N.W.2d at 824, we nevertheless view legislative inaction in an area otherwise heavily regulated as a factor to be considered in making that determination.

A third related factor to be considered in determining the existence or nonexistence of a common-law duty is which parties are best able to prevent or substantially lessen the likelihood of an accident, and at what cost. Ordinarily a landowner in Norton's position would have no expertise in determining what does or does not constitute sufficient visibility or in concluding what steps would be required to select offending trees. Unobstructed vision for approaching motorists might require cutting back trees located five or one hundred feet from the property line, depending on the terrain and other circumstances. Clearly, the cost of identifying measures to improve visibility coupled with the costs of periodic trimming or removing trees would be substantial. Although such steps might be effective, we question whether they could be justified economically, given the infrequency with which such accidents occur.

By comparison, the county and the motorists are in a much better position to take precautions sufficient to minimize any danger. Every motorist, of course, has the continuing and primary obligation to exercise reasonable care for his or her own safety and for the safety of others traveling on the road. Further, the county, although limited in authority to enter private property extending beyond the highway line to remove obstructions, *see* Iowa Code §§ 309.67, 314.7, 319.1–.15, 460.12–.13 (1983), is authorized to place signs to warn motorists of an obstructed view, *see id.* §§ 321.252, 321.255. This could easily be accomplished at a minimum of expense.

Finally, we note that in cases like this consideration traditionally has been given to (1) whether the cause of the damage flowed from a naturally occurring or artificially created condition on the landowner's

property; and (2) whether the property is located in an urban or rural area. *See* Restatement (Second) of Torts §§ 363, 368 (1964); *see also* Prosser, *The Law of Torts* § 57, at 352–56 (4th ed. 1971).

We are not convinced as some courts that the distinctions between natural and artificial, and rural and urban, are of little or no value, *see, e.g., Sprecher v. Adamson Companies,* 30 Cal.3d 358, 636 P.2d 1121, 178 Cal.Rptr. 783 (1981). For example, we have recognized the artificial-natural distinction when examining property owners' liability for pedestrians' injuries caused by falls on sidewalks covered by ice or snow. In those cases we have recognized no owners' liability for a naturally occurring hazard but have recognized liability when the abutting owner in some way created and maintained the hazardous condition on the sidewalk. *See Peffers v. City of Des Moines,* 299 N.W.2d 675, 677 (Iowa 1980).[1] Unlike those cases involving physical obstruction of highways, here the trees did not actually obstruct the traveled way. Although it is apparent Norton or others planted several trees on the property, this alone is an insufficient basis upon which to impose liability. Rather, this factor is only one of several to be weighed and balanced.

After weighing the above factors, we conclude Norton owed motorists no duty under the circumstances of this case. We therefore affirm the summary judgment entered by the district court.

AFFIRMED.

---

1. The legislature nullified the *Peffers* holding by a 1984 amendment to Iowa Code § 364.12(2)(b), imposing liability on the abutting owner for failing to use reasonable care in the removal of snow and ice from the sidewalk. *See* 1984 Iowa Acts ch. 1002, § 1.