John SHAW, Administrator of the Estate of William J. Shaw, Deceased; Laurie A. Willis, Administrator of the Estate of Dean Dennis Willis, a/k/a Dean D. Willis, Deceased, Appellants,

v.

SOO LINE RAILROAD CO., Joseph C. Spinso, Defendants,

Swiss Valley Farms Co., Inc., f/k/a Mississippi Valley Milk Producers Assoc., and Mike's Lines, Inc., Appellees.

No. 89–1176.

Supreme Court of Iowa.

Nov. 21, 1990.

Edward J. Gallagher, Jr., and Timothy C. Boller of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellants.

David L. Riley of Lindeman & Yagla, Waterloo, for appellee Swiss Valley Farms.

Michael J. Coyle and Gregg L. Owens of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee Mike's Lines.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This appeal concerns the question of whether a private landowner and its business invitee owe a statutory or common law duty to guard against the risk of harm from obstructed visibility. The district court granted appellees' motions for pretrial summary judgment, finding appellees owed no such duty. We transferred the case to the court of appeals which, on an evenly divided vote, affirmed the summary judgment by operation of law. We granted further review and now affirm the decision of the court of appeals and judgment of the district court.

Our review in actions at law is for correction of errors at law. Iowa R.App.P. 4; *City of Albia v. Stephens*, 461 N.W.2d 326, 328 (Iowa 1990).

Well established principles of statutory construction guide our resolution of this controversy:

Of course, the polestar is legislative intent. Our goal then, is to ascertain that intent and, if possible, give it effect. To ascertain the legislative intent we must look to what the legislature said, rather than what it should or might have said. Words are given their ordinary meaning unless defined differently by the legislature or possessed of a particular and appropriate meaning in law. However, we must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction.

*Hearst Corp. v. Iowa Dep't of Revenue and Fin.*, 461 N.W.2d 295, 299 (Iowa 1990) (citations omitted).

On May 25, 1986, Duane Gray, accompanied by appellants' decedents, Dean Willis and William Shaw, was driving northbound on county road 2090S in Clayton County, Iowa. At the same time, traveling west, was a train owned and operated by the Soo Line Railroad Co. At approximately 9:20 p.m., as the Gray vehicle entered the rail crossing, it was struck on the right side by the Soo Line train. Dean Willis and William Shaw died as a result of injuries suffered in the collision.

Appellee Swiss Valley Farms Company (Swiss Valley) operates a creamery located to the southeast of the intersection of the railway and county road 2090S. On the night of the accident, appellee Mike's Lines, Inc. (Mike's Lines) had two semi-trailers parked in a parking lot owned and maintained by Swiss Valley. The parking lot is adjacent to and directly west of the Swiss Valley creamery buildings. The original creamery plant was constructed in 1962 with one addition added in 1970 and a second erected in 1975.

It is undisputed that the semi-trailer parked closest to the railroad crossing was approximately twenty-five feet south of the south rail of the railway; parked parallel to county road 2090S and perpendicular to the railroad tracks. Furthermore, the trailer was forty-four feet east of the east con-crete edge of the pavement and, therefore, at least five feet east of the county right-of-way. Based on these facts, appellants contend that the court of appeals and district court erred in deciding that Swiss Valley and Mike's Lines owed no duty to guard against the risk of harm created by the presence of vehicles and/or buildings under their control which obstructed the vision of the operators of the train and automobile involved in the collision.

■ A prerequisite to establishing a claim of negligence is the existence of a legal duty. *Bain v. Gillispie*, 357 N.W.2d 47, 49 (Iowa App.1984) (citing *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 285 (Iowa 1981); *Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979)). Whether a duty arises out of the parties' relationship is always a matter of law for the court. *See Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 844 (Iowa 1981); W. Prosser, *Handbook of the Law of Torts* § 37, at 206 (4th ed. 1971); 57 Am.Jur.2d *Negligence* § 36, at 384 (1971).

In reviewing the propriety of granting summary judgment, the moving party is required to show there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 40 (Iowa 1979). Summary judgment is appropriate when there is no material fact at issue and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). However, even if the facts are undisputed, summary judgment may not be appropriate if reasonable minds may draw different inferences from them. *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979). Therefore, on appeal, we examine the record in the light most favorable to the party opposing the motion to determine if the movants have met their burden. *Matherly v. Hanson*, 359 N.W.2d 450, 453 (Iowa 1984).

■ Although appellees have the burden of proving that no material fact is in dispute, this does not relieve appellants' burden to make a showing sufficient to establish the existence of an element essential to their case. Appellants' burden of proof

must be considered in determining whether appellants have met their burden of resisting appellees' motion for summary judgment. If the evidence before the court requires a directed verdict for the appellees, a motion for summary judgment should be sustained. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (applying Federal Rule of Civil Procedure 56). Because Iowa Rule of Civil Procedure 237 is patterned after Federal Rule of Civil Procedure 56, we find federal cases interpreting rule 56 persuasive in our interpretation of the Iowa rule. *Brody v. Ruby*, 267 N.W.2d 902, 904 (Iowa 1978).

## I. *Was a Statutory Duty Owed Appellants' Decedents?*

■ At the heart of this dispute is Iowa Code section 321.358(8) (1985), which provides in part that:

> No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control device, in any of the following places:
>
> . . . .
>
> 8. Within fifty feet of the nearest rail of a railroad crossing, except when parked parallel with such rail and not exhibiting a red light.

However, Iowa Code section 321.228 (1985) specifies that:

> The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except:
>
> 1. Where a different place is specifically referred to in a given section.
>
> 2. The provisions of sections 321.261 to 321.274, section 321.277 and sections 321.280 to 321.282 shall apply upon highways and elsewhere throughout the state.

Appellants contend it is apparent from a plain reading of these statutes that Iowa Code section 321.358(8) (1985) governs the placement of such vehicles even when parked on private property. A careful reading of Iowa Code chapter 321 (1985),

however, shows that the chapter applies only to the operation of motor vehicles upon Iowa highways. It cannot be construed to legislate where vehicles may or may not park on private property. When the legislature has intended for a "rule of the road" to apply elsewhere, it has explicitly stated so. For example, Iowa Code section 321.358(1) (1985) prohibits stopping, standing, or parking vehicles on a sidewalk. Where no specific place is specified, it is mandated by Iowa Code chapter 321 (1985) that the provisions of the chapter shall only apply to the public roads. Construing the statutory language as appellants would have this court construe it, would place a strained, impractical or absurd construction upon such language in contravention to our principles of statutory construction. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977).

"The meaning of the statute is always an issue of law for the court to decide." *North Star Steel Co. v. Iowa Dep't of Revenue*, 380 N.W.2d 677, 680 (Iowa 1986) (citing *Schmitt v. Iowa Dep't of Social Serv.*, 263 N.W.2d 739, 745 (Iowa 1978)). Any speculation about the legislature's intent in enacting Iowa Code section 321.358(8) (1985) cannot displace the plain meaning of Iowa Code sections 321.228 and 321.251. Therefore, because the semi-trailers owned by Mike's Lines were parked on the private parking lot of Swiss Valley, we hold that the provisions of Iowa Code section 321.358(8) are not applicable to the facts of this case and create no statutory duty for the appellees to guard against the harm alleged.

## II. *Was a Common Law Duty Owed Appellants' Decedents?*

Appellants further contend that even if Iowa Code section 321.358(8) does not apply, Mike's Lines and Swiss Valley owe a duty under common law to park their vehicles so as not to obstruct the view of motorists or trains approaching the railroad crossing.

Appellants also contend that Restatement (Second) of Torts section 368 (1965) places a common law duty on appellees to

refrain from obstructing visibility at the railroad crossing. That section states that:

A possessor of land who creates or permits to retain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

Restatement (Second) of Torts § 368 (1965).

■ Appellants are correct in stating that this court places weight upon the Restatement (Second) of Torts when determining whether a given defendant owes a duty to a plaintiff and the scope of that duty. *See, e.g., Toney v. Casey's Gen. Stores, Inc.,* 372 N.W.2d 220 (Iowa 1985); *Frantz v. Knights of Columbus,* 205 N.W.2d 705 (Iowa 1973); *Hawkeye–Security Ins. Co. v. Ford Motor Co.,* 174 N.W.2d 672 (Iowa 1970).

■ But appellants' reliance on Restatement (Second) of Torts section 368 is misplaced. Since this section is directed at possessors of land, it is intended to cover conditions (like excavations) which are a part of the real estate. These semi-trailers owned by Mike's Lines are not part of Swiss Valley's real estate.

Second, the hazard addressed by section 368 is not the risk of sight obstruction, but rather the risk that a traveler will come into contact with a condition on the real estate, either while traveling on the highway or foreseeably deviating from the highway in the ordinary course of travel. Even assuming that the semi-trailers constitute an "artificial condition" of the real estate as that undefined term is used in section 368, the semi-trailers would not violate section 368 unless they posed an unreasonable risk to travelers who may accidentally be brought into contact with them.

Applying the same analysis to the creamery buildings, we find Restatement (Second) of Torts section 368 does not apply. Although the buildings are part of the real estate, the facts of this case show that no physical contact was made by appellants' vehicle and the creamery buildings.

Appellees, on the other hand, contend that the common law issue in this case is more properly disposed of by analogy to several of our previous decisions. In *Bruggeman v. Illinois Central Railroad Co.,* 154 Iowa 596, 134 N.W. 1079 (1912), we considered whether a railroad's placing of freight cars on a sidetrack which obstructs the view of a motorist approaching the crossing is an independent ground of negligence. In that case, we stated "[t]hat the placing of freight cars upon a sidetrack so as to obstruct the view of a crossing would not be deemed as an independent ground of negligence is too plain to require argument." *Id.* at 599, 134 N.W. at 1080.

This court has also held that submission to the jury of an issue of negligence in placing box cars near a crossing which obstruct the view of a traveler is reversible error, *Anderson v. United States R.R. Admin.,* 193 Iowa 1041, 1046, 188 N.W. 826, 829 (1922), and that the presence of railroad cars claimed to constitute an obstruction of view is not an act of negligence which is sufficient to create liability for damages. *Bannister v. Illinois Cent. R.R. Co.,* 199 Iowa 657, 658, 202 N.W. 766, 767 (1925).

These cases suggest that the presence of obstructions to view at a railroad crossing is a circumstance which bears upon the degree of care required to be exercised by both the railroad and the motoring public, but does not provide a basis for a cause of action in tort. Decisions of high courts in other jurisdictions are in accord with this rule. *See, e.g., Alabama Great S. R.R. Co. v. Johnston,* 281 Ala. 140, 199 So.2d 840, 844 (1967); *Midland Valley Ry. Co. v. Pettie,* 196 Okl. 52, 162 P.2d 543, 546 (1945); *Parrish v. Atlantic Coastline Ry. Co.,* 221 N.C. 292, 20 S.E.2d 299, 304 (1942); *Cowles v. New York, N.H. and H.R. Co.,* 80 Conn. 48, 66 A. 1020 (1907).

Although factually distinguishable from the present case, this court has previously considered whether obstructions to view located on private property and off the traveled portion of the roadway will support a cause of action for negligence. In *Fritz v. Parkison*, 397 N.W.2d 714 (Iowa 1986), plaintiff alleged that trees, brush and shrubs growing on the property of a third-party defendant constituted a sight distance obstruction which was the proximate cause of an accident in which plaintiff was injured. In *Fritz*, we held that:

> [W]e have at various times imposed liability against individuals responsible for allowing a highway to become obstructed or hazardous ... in each of these cases the traveled way actually was obstructed and in several of them the hazard presented was sudden and unexpected.
>
> By contrast, in this case, Norton's trees did not physically obstruct or in any way intrude upon the traveled portion of the road. Rather, the trees were located off the right-of-way. They neither directly impeded travel nor constituted any kind of latent condition ... while Norton's trees may have required drivers to proceed with some additional degree of caution, the trees could not reasonably have been expected to pose any significant threat to motorists operating their vehicles in a reasonably prudent manner, and clearly could not be characterized as an unexpected occurrence like a falling limb or a gaggle of geese. It is equally plain that primary responsibility for insuring reasonably safe highways is not imposed on abutting property owner.

*Id.* at 715–16 (citations omitted) (affirming summary judgment entered by district court).

Although not a natural sight obstruction like the trees in *Fritz*, the semi-trailers parked on Swiss Valley property do not physically obstruct or in any way intrude upon the traveled portion of the road.

Appellants argue that the appellees were in a better position than Duane Gray to prevent the accident which is the subject of this lawsuit. Even apart from the lack of any legal duty devolved on appellees, we do not find this to be so. Had the driver of the automobile in which appellants decedents were riding observed his legal duty to stop, look and listen at the crossing, this accident probably would not have occurred. *See Scherer v. Scandrett*, 235 Iowa 229, 16 N.W.2d 329 (1944).

After weighing all the factors involved in this litigation, we conclude appellees Swiss Valley and Mike's Lines owed motorists no duty to guard against the risk of harm from obstructed visibility under the circumstances of this case. We therefore affirm the summary judgment entered by the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.