# IN THE SUPREME COURT OF IOWA

No. 08–0647

Filed November 13, 2009

**CHARLES W. THOMPSON** and
**KARYL J. THOMPSON,**

Appellants,

vs.

**JAMES F. KACZINSKI** and
**MICHELLE K. LOCKWOOD,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Madison County, Darrell J. Goodhue, Judge.

Plaintiffs appeal from a summary judgment ruling dismissing their personal injury claims. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Randy V. Hefner and Matthew J. Hemphill of Hefner & Bergkamp, P.C., Adel, for appellants.

Sharon Soorholtz Greer and Melinda G. Young of Cartwright, Druker & Ryden, Marshalltown, for appellees.

**HECHT, Justice**.

A motorist lost control of his car on a rural gravel road and crashed upon encountering a trampoline that had been displaced by the wind from an adjoining yard to the surface of the road. He and his spouse sued the owners of the trampoline. The district court granted summary judgment, concluding the defendants owed no duty to the motorist under the circumstances and the personal injuries resulting from the crash were not proximately caused by the defendants' alleged negligence. As we conclude the district court erred in granting summary judgment, we reverse and remand this case for trial.

## I. Factual and Procedural Background.

James Kaczinski and Michelle Lockwood resided in rural Madison County, near Earlham, on property abutting a gravel road. During the late summer of 2006, they disassembled a trampoline and placed its component parts on their yard approximately thirty-eight feet from the road. Intending to dispose of them at a later time, Kaczinski and Lockwood did not secure the parts in place. A few weeks later, on the night of September 16 and morning of September 17, 2006, a severe thunderstorm moved through the Earlham area. Wind gusts from the storm displaced the top of the trampoline from the yard to the surface of the road.

Later that morning, while driving from one church to another where he served as a pastor, Charles Thompson approached the defendants' property. When he swerved to avoid the obstruction on the road, Thompson lost control of his vehicle. His car entered the ditch and rolled several times. Kaczinski and Lockwood were awakened by Thompson's screams at about 9:40 a.m., shortly after the accident. When they went outside to investigate, they discovered the top of their

trampoline lying on the roadway. Lockwood dragged the object back into the yard while Kaczinski assisted Thompson.

Thompson and his wife filed suit, alleging Kaczinski and Lockwood breached statutory and common law duties by negligently allowing the trampoline to obstruct the roadway. Kaczinski and Lockwood moved for summary judgment, contending they owed no duty under the circumstances because the risk of the trampoline's displacement from their yard to the surface of the road was not foreseeable. The district court granted the motion, concluding Kaczinski and Lockwood breached no duty and the damages claimed by the plaintiffs were not proximately caused by the defendants' negligence. The Thompsons appealed. We transferred the case to the court of appeals, which affirmed the district court's ruling. We granted the Thompsons' application for further review.

## II. Scope of Review.

We review a district court's grant of summary judgment for correction of errors at law. Iowa R. App. P. 6.907; *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 840–41 (Iowa 2005). Summary judgment is appropriate only if there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The party seeking the summary judgment has the burden of proof, and the court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party. *Clinkscales,* 697 N.W.2d at 841.

It is well-settled that "questions of negligence or proximate cause are ordinarily for the jury," and "only in exceptional cases should they be decided as a matter of law." *Id.*; *see also Virden v. Betts & Beer Constr. Co.,* 656 N.W.2d 805, 807 (Iowa 2003) (noting summary judgment is usually inappropriate in negligence cases).

### III. Discussion.

**A. Iowa Code Section 318.3.** The Thompsons contend Kaczinski and Lockwood breached a statutory duty to avoid obstructing a highway right-of-way. *See* 2006 Iowa Acts ch. 1097, § 3 (codified at Iowa Code § 318.3 (2007)). Section 318.3 provides a person "shall not place, or cause to be placed, an obstruction within any highway right-of-way." An "obstruction" is defined as "an obstacle in the highway right-of-way or an impediment or hindrance which impedes, opposes, or interferes with free passage along the highway right-of-way." Iowa Code § 318.1(4). It is undisputed that the defendants' trampoline was in the road and that the defendants did not intend for the trampoline to be there at the time of the crash. The district court concluded that because the defendants' failure to secure their trampoline and prevent its displacement to the roadway was unintentional, their actions did not violate the statute. The Thompsons contend this was error and that the phrase "cause to be placed" is intended to address acts that unintentionally result in an obstruction of the highway. We disagree.

When a statute or rule is plain and its meaning is clear, the rules of statutory construction do not permit courts to search for meaning beyond its express terms. *State v. Snyder*, 634 N.W.2d 613, 615 (Iowa 2001). We generally presume words contained in a statute are used in their ordinary and usual sense with the meaning commonly attributed to them. *Am. Home Prods. Corp. v. Iowa State Bd. of Tax Review*, 302 N.W.2d 140, 143 (Iowa 1981). When not defined in a statute, we construe a term according to its accepted usage. *Id.* We resort to rules of statutory construction when the explicit terms of a statute are ambiguous. *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 717 (Iowa 1999). Ambiguity is found in a statute "if reasonable minds could differ

or be uncertain as to the meaning of the statute." *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996). In this case, reasonable minds could disagree whether the phrase "cause to be placed" addresses only intentional conduct or if conduct resulting in an unintentional obstruction is also covered. Accordingly, we shall apply our well-established rules in interpreting the ambiguous phrase.

Our goal in interpreting a statute is to ascertain legislative intent. *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 309 (Iowa 2007). In determining legislative intent we consider not only the words used by the legislature, but also the statute's "subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, . . . and the consequences of various interpretations." *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003). We look to the context in which the ambiguous phrase is used and consider its relationship to associated words and phrases. *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999). We give "a plain, ordinary meaning to words, phrases, and punctuation" and presume "that no part of an act is intended to be superfluous." *TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 713 (Iowa 2002).

The Thompsons contend the prohibition on *placing* an obstruction addresses intentional conduct while the prohibition on *causing to be placed* addresses unintentional conduct. They posit that if the statute is not interpreted in this way, the phrase "cause to be placed" is rendered superfluous.

While the Thompsons' reading of the statute is certainly a plausible interpretation, we are not convinced the phrase "cause to be placed" is rendered superfluous if it addresses intentional behavior. Consider the example of two landowners. One landowner builds a fence herself within

the highway right-of-way. The other landowner hires a contractor to build a fence in the highway right-of-way. In the first instance, the landowner has placed the obstruction herself, while in the second scenario, she has caused the obstruction to be placed. Both are arguably intentional acts. We conclude the legislature included the phrase "cause to be placed" to prevent a person from avoiding liability by simply hiring someone else to do the "placing."

A review of the entire statutory scheme further convinces us the legislature did not intend to address negligent or unintentional behavior. Iowa Code section 318.12 gives the highway authority the ability to "enforce the provisions of this chapter by appropriate civil or criminal proceeding" or both. Section 318.6 provides any person who places or causes an obstruction to be placed "is deemed to have created a public nuisance punishable as provided in chapter 657." Section 657.3 provides a person found guilty of causing a public nuisance "shall be guilty of an aggravated misdemeanor." We are not inclined to interpret section 318.3 in a way that would result in punishing ordinary negligence as an aggravated misdemeanor—a necessary result of interpreting the statute as the Thompsons urge. Accordingly, we conclude the district court correctly determined that under the facts presented here, section 318.3 does not impose a duty upon Lockwood and Kaczinski to refrain from negligently causing an obstruction to be placed in the right-of-way.

**B. Common Law Duty.** An actionable claim of negligence requires " ' "the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." ' " *Stotts v. Eveleth,* 688 N.W.2d 803, 807 (Iowa 2004) (quoting *Van Essen v. McCormick Enters. Co.,* 599 N.W.2d 716, 718 (Iowa

1999)). Plaintiffs contend Kaczinski and Lockwood owed a common law duty to exercise reasonable care to prevent their personal property from obstructing the roadway and to remove their property from the roadway within a reasonable time after it became an obstruction. Whether a duty arises out of a given relationship is a matter of law for the court's determination. *Shaw v. Soo Line R.R.,* 463 N.W.2d 51, 53 (Iowa 1990).

Our cases have suggested three factors should be considered in determining whether a duty to exercise reasonable care exists: " '(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations.' " *Stotts,* 688 N.W.2d at 810 (quoting *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.,* 589 N.W.2d 256, 258 (Iowa 1999)); *accord Leonard v. State,* 491 N.W.2d 508, 510–12 (Iowa 1992) (discussing relationship between the parties, foreseeability of harm to the plaintiff, and public policy considerations when determining if a psychiatrist owed a duty to protect members of the public from the violent behavior of a patient). Our previous decisions have characterized the proposition that the relationship giving rise to a duty of care must be premised on the foreseeability of harm to the injured person as "a fundamental rule of negligence law." *Sankey v. Richenberger,* 456 N.W.2d 206, 209–10 (Iowa 1990). The factors have not been viewed as three distinct and necessary elements, but rather as considerations employed in a balancing process. *Stotts,* 688 N.W.2d at 810. "In the end, whether a duty exists is a policy decision based upon all relevant considerations that guide us to conclude a particular person is entitled to be protected from a particular type of harm." *J.A.H.,* 589 N.W.2d at 258.

The role of foreseeability of risk in the assessment of duty in negligence actions has recently been revisited by drafters of the

Restatement (Third) of Torts. "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liab. for Physical Harm § 7(a), at 90 (Proposed Final Draft No. 1, 2005) [hereinafter Restatement (Third)].[1] Thus, in most cases involving physical harm, courts "need not concern themselves with the existence or content of this ordinary duty," but instead may proceed directly to the elements of liability set forth in section 6. *Id.* § 6 cmt. *f*, at 81. The general duty of reasonable care will apply in most cases, and thus courts "can rely directly on § 6 and need not refer to duty on a case-by-case basis." *Id.* § 7 cmt. *a*, at 90.

However, in exceptional cases, the general duty to exercise reasonable care can be displaced or modified. *Id.* § 6 cmt. *f*, at 81–82. An exceptional case is one in which "an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases." *Id.* § 7(b), at 90. In such an exceptional case, when the court rules as a matter of law that no duty is owed by actors in a category of cases, the ruling "should be explained and justified based on articulated policies or principles that justify exempting [such] actors from liability or modifying the ordinary duty of reasonable care." *Id.* § 7 cmt. *j*, at 98. Reasons of policy and principle justifying a departure from the general duty to exercise reasonable care do not depend on the foreseeability of harm based on the specific facts of a case. *Id.* "A lack of

---

[1]The substance of the Proposed Final Draft No. 1 of the Restatement (Third) of Torts has been finally approved by both the American Law Institute's Council and its membership (with the exception of two comments which are not relevant to our analysis or disposition in this case). The draft has not been published in final form because the American Law Institute has expanded the project to include chapters on emotional harm and landowner liability. Upon completion of the additional chapters, the final text will be published. American Law Institute, Current Projects, http://www.ali.org/index.cfm?fuseaction=projects.proj_ip&projectid=16.

foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination." *Id.*

The assessment of the foreseeability of a risk is allocated by the Restatement (Third) to the fact finder, to be considered when the jury decides if the defendant failed to exercise reasonable care.

> Foreseeable risk is an element in the determination of negligence. In order to determine whether appropriate care was exercised, the factfinder must assess the foreseeable risk at the time of the defendant's alleged negligence. The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. . . . [C]ourts should leave such determinations to juries unless no reasonable person could differ on the matter.

*Id.* at 97–98. The drafters acknowledge that courts have frequently used foreseeability in no-duty determinations, but have now explicitly disapproved the practice in the Restatement (Third) and limited no-duty rulings to "articulated policy or principle in order to facilitate more transparent explanations of the reasons for a no-duty ruling and to protect the traditional function of the jury as factfinder." *Id.* at 98–99. We find the drafters' clarification of the duty analysis in the Restatement (Third) compelling, and we now, therefore, adopt it.

The district court clearly considered foreseeability in concluding the defendants owed no duty in this case. When the consideration of foreseeability is removed from the determination of duty, as we now hold it should be, there remains the question of whether a principle or strong policy consideration justifies the exemption of Kaczinski and Lockwood— as part of a class of defendants—from the duty to exercise reasonable care. We conclude no such principle or policy consideration exempts property owners from a duty to exercise reasonable care to avoid the

placement of obstructions on a roadway. In fact, we have previously noted the public's interest in ensuring roadways are safe and clear of dangerous obstructions for travelers:

> While an abutting landowner is not liable with respect to highway hazards over which he has no control, he is under an obligation to use reasonable care to keep his premises in such condition as not to create hazards in the adjoining highway. He must conduct operations on his land in such a manner as not to injure the highway traveler.

*Weber v. Madison,* 251 N.W.2d 523, 527 (Iowa 1977) (citation omitted); *see also Fritz v. Parkison,* 397 N.W.2d 714, 715 (Iowa 1986) (noting public policy to keep highways free from obstructions and hazards is well-developed and clearly recognized); *Stewart v. Wild,* 196 Iowa 678, 683, 195 N.W. 266, 269 (1923) ("It is the fundamental law of the highway that it is subject to the use of the traveling public, and that it must be kept free from such obstructions as are not incident to its use for travel."). Accordingly, we conclude the district court erred in determining Kaczinski and Lockwood owed no common law duty under the circumstances presented here.

**C. Causation.** Although the memorandum filed by Kaczinski and Lockwood in support of their motion for summary judgment raised only the questions of whether a duty was owed and whether a duty was breached, the district court concluded the plaintiffs' claims must fail for the further reason that they did not establish a causal connection between their claimed injuries and damages and the acts and omissions of Kaczinski and Lockwood. Again relying on its determination that the risk of the trampoline's displacement from the yard to the roadway was not foreseeable, the court resolved the causation issue against the Thompsons as a matter of law.

We have held causation has two components: cause in fact and legal cause. *Faber v. Herman,* 731 N.W.2d 1, 7 (Iowa 2007). The decisions of this court have established it is the plaintiff's burden to prove both cause in fact and legal (proximate) cause. *See City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.,* 617 N.W.2d 11, 17 (Iowa 2000). The latter component requires a policy determination of whether "the policy of the law must require the defendant to be *legally responsible* for the injury." *Gerst v. Marshall,* 549 N.W.2d 810, 815 (Iowa 1996). Causation is a question for the jury, " '*save in very exceptional cases* where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom.' " *Lindquist v. Des Moines Union Ry.,* 239 Iowa 356, 362, 30 N.W.2d 120, 123 (1947) (quoting *Fitter v. Iowa Tel. Co.,* 143 Iowa 689, 693–94, 121 N.W. 48, 50 (1909)).

We have previously applied the test articulated in the Restatement (Second) of Torts when determining if a defendant's conduct is a legal or proximate cause of the plaintiff's damages. This test holds "[t]he actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability." Restatement (Second) of Torts § 431, at 428 (1965); *accord Kelly v. Sinclair Oil Corp.,* 476 N.W.2d 341, 349 (Iowa 1991). In deciding whether conduct is a substantial factor in bringing about the harm, we have considered the "proximity between the breach and the injury based largely on the concept of foreseeability." *Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.,* 656 N.W.2d 71, 83 (Iowa 2002). The word "substantial" has been used to express "the notion that the defendant's conduct has such an effect in producing the

harm as to lead reasonable minds to regard it as a cause." *Sumpter v. City of Moulton*, 519 N.W.2d 427, 434 (Iowa Ct. App. 1994).

The formulation of legal or proximate cause outlined above has been the source of significant uncertainty and confusion. This court's adherence to the formulation has been less than consistent. *See Gerst,* 549 N.W.2d at 816–17 (chronicling inconsistencies in our approach to questions of proximate causation). Even had it been applied consistently, the concept of legal or proximate cause itself has been criticized for confusing factual determinations (substantial factor in bringing about harm) with policy judgments (no rule of law precluding liability). *Id.* at 816. Although we have previously noted our uneven approach to proximate cause questions and acknowledged the criticism of the doctrine, we have not yet had the opportunity to clarify this area of law. *Id.* at 817. We do now.

"Tort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct." Restatement (Third) ch. 6 Special Note on Proximate Cause, at 574. This concept has traditionally been designated "proximate cause." While this term is used extensively and appropriately by courts, practitioners, and scholars, it causes considerable confusion for juries because it does not clearly express the idea it is meant to represent. *See id.* § 29 cmt. *b*, at 576–77. The confusion arises when jurors understand "proximate cause" as implying "there is but one cause—the cause nearest in time or geography to the plaintiff's harm—and that factual causation bears on the issue of scope of liability." *Id.* § 29 cmt. *b,* at 577. Thus, in an attempt to eliminate unnecessary confusion caused by the traditional vernacular,

the drafters of the third Restatement refer to the concept of proximate cause as "scope of liability."[2]

The drafters of the Restatement (Third) explain that the "legal cause" test articulated in the second Restatement included both the "substantial factor" prong and the "rule of law" prong because it was intended to address both factual and proximate cause. *Id.* ch. 6 Special Note on Proximate Cause, at 574. Although the "substantial factor" requirement has frequently been understood to apply to proximate cause determinations, *see Gerst,* 549 N.W.2d at 815–16, the drafters contend it was never intended to do so. Restatement (Third) § 29 cmt. *a,* at 576.[3] Accordingly, to eliminate the resulting confusion of factual and policy determinations resulting from the Restatement (Second) formulation of legal cause, the drafters have opted to address factual cause and scope of liability (proximate cause) separately. Restatement (Third) ch. 6 Special Note on Proximate Cause, at 575. The assessment of scope of liability

---

[2]The Restatement (Second) rarely used the term "proximate cause," but instead used "legal cause" as an umbrella term to address both concepts of factual cause and proximate cause. Restatement (Third) ch. 6 Special Note on Proximate Cause, at 574. The drafters of the Restatement (Third) have also abandoned the use of the term "legal cause" because, like "proximate cause," it "contributes to the misleading impression that limitations on liability somehow are about factual cause" and the term has never become widely accepted and utilized in tort law. *Id.* at 575.

[3]Our opinion in *Gerst* suggested the substantial factor test was developed to address a situation in which there were two or more causes of the harm to plaintiff and either of the causes alone would have been sufficient to bring about the harm. In this situation, because a strict application of the cause-in-fact "but-for" test "would allow both tortfeasors to avoid liability, courts made the policy decision to nevertheless impose liability 'if [the defendant's conduct] was a material element and a *substantial factor* in bringing [the event] about.'" *Gerst,* 549 N.W.2d at 815 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 41, at 267 (5th ed. 1984)). Citing *Prosser*, we suggested in *Gerst* that "the substantial factor test was originally intended to address a legal causation issue, not one of causation in fact." *Id.* at 815–16. Having reexamined the question, we concur with the drafters of the Restatement (Third) on this point. The Restatement (Third) addresses the problem of multiple sufficient causes as part of the factual cause determination. *See* Restatement (Third) § 27, at 452.

under the Restatement (Third) no longer includes a determination of whether the actor's conduct was a substantial factor in causing the harm at issue, a question properly addressed under the factual cause rubric. *See id.* § 27 cmt. *j*, at 427–29.[4]

Most importantly, the drafters of the Restatement (Third) have clarified the essential role of policy considerations in the determination of the scope of liability. "An actor's liability is limited to those physical harms that result from the risks that made the actor's conduct tortious." *Id.* § 29, at 575. This principle, referred to as the "risk standard," is intended to prevent the unjustified imposition of liability by "confining liability's scope to the reasons for holding the actor liable in the first place." *Id.* § 29 cmt. *d*, at 579–80. As an example of the standard's application, the drafters provide an illustration of a hunter returning from the field and handing his loaded shotgun to a child as he enters the house. *Id.* cmt. *d*, illus. 3, at 581. The child drops the gun (an object assumed for the purposes of the illustration to be neither too heavy nor unwieldy for a child of that age and size to handle) which lands on her foot and breaks her toe. *Id.* Applying the risk standard described above, the hunter would not be liable for the broken toe because the risk that made his action negligent was the risk that the child would shoot someone, not that she would drop the gun and sustain an injury to her foot. *Id.*

The scope-of-liability issue is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those

---

[4]We noted in *Gerst*, 549 N.W.2d at 817, but did not decide the question whether the substantial factor test should be eliminated.

risks. *Id.* § 29 cmt. *d,* at 580, 584. When, as in this case, the court considers in advance of trial whether

> the plaintiff's harm is beyond the scope of liability as a matter of law, courts must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious. Then, the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter.

*Id.* at 580.

The drafters advance several advantages of limiting liability in this way. First, the application of the risk standard is comparatively simple. *Id.* cmt. *e,* at 585. The standard "appeals to intuitive notions of fairness and proportionality by limiting liability to harms that result from risks created by the actor's wrongful conduct, but for no others." *Id.* It also is flexible enough to "accommodate fairness concerns raised by the specific facts of a case." *Id.*

Foreseeability has previously played an important role in our proximate cause determinations. *See Virden,* 656 N.W.2d at 808. For example,

> " 'An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury.' "

*Scoggins v. Wal-Mart Stores, Inc.,* 560 N.W.2d 564, 568–69 (Iowa 1997) (quoting *Fly v. Cannon,* 836 S.W.2d 570, 574 (Tenn. Ct. App. 1992)). When, as in this case, we have been called upon to consider the role of an intervening or superseding cause, the question of the foreseeability of the superseding force has been critical. *See Summy v. City of Des*

*Moines,* 708 N.W.2d 333, 342 (Iowa 2006); *Clinkscales,* 697 N.W.2d at 843.

The drafters of the Restatement (Third) explain that foreseeability is still relevant in scope-of-liability determinations. "In a negligence action, prior incidents or other facts evidencing risks may make certain risks foreseeable that otherwise were not, thereby changing the scope-of-liability analysis." Restatement (Third) § 29 cmt. *d,* at 584–85. In fact, they acknowledge the similarity between the risk standard they articulate and the foreseeability tests applied by most jurisdictions in making causation determinations in negligence cases.

> Properly understood, both the risk standard and a foreseeability test exclude liability for harms that were sufficiently unforeseeable at the time of the actor's tortious conduct that they were not among the risks—potential harms—that made the actor negligent. . . . [W]hen scope of liability arises in a negligence case, the risks that make an actor negligent are limited to foreseeable ones, and the factfinder must determine whether the type of harm that occurred is among those reasonably foreseeable potential harms that made the actor's conduct negligent.

*Id.* § 29 cmt. *j,* at 594. Although the risk standard and the foreseeability test are comparable in negligence actions, the drafters favor the risk standard because it "provides greater clarity, facilitates clearer analysis in a given case, and better reveals the reason for its existence." *Id.* They explain that a foreseeablity test "risks being misunderstood because of uncertainty about what must be foreseen, by whom, and at what time." *Id.* at 595.

We find the drafters' clarification of scope of liability sound and are persuaded by their explanation of the advantages of applying the risk standard as articulated in the Restatement (Third), and, accordingly, adopt it.

Our next task, then, is to consider whether the district court erred in concluding the harm suffered by the Thompsons was, a matter of law, outside the scope of the risk of Kaczinski and Lockwood's conduct. We conclude the question of whether a serious injury to a motorist was within the range of harms risked by disassembling the trampoline and leaving it untethered for a few weeks on the yard less than forty feet from the road is not so clear in this case as to justify the district court's resolution of the issue as a matter of law at the summary judgment stage. A reasonable fact finder could determine Kaczinski and Lockwood should have known high winds occasionally occur in Iowa in September and a strong gust of wind could displace the unsecured trampoline parts the short distance from the yard to the roadway and endanger motorists. Although they were in their home for several hours after the storm passed and approximately two-and-a-half hours after daybreak, Kaczinski and Lockwood did not discover their property on the nearby roadway, remove it, or warn approaching motorists of it. On this record, viewed in the light most favorable to the Thompsons, we conclude a reasonable fact finder could find the harm suffered by the Thompsons resulted from the risks that made the defendants' conduct negligent. Accordingly, the district court erred in deciding the scope-of-liability question as a matter of law in this case.

## IV. Conclusion.

The district court correctly determined Kaczinski and Lockwood owed no statutory duty pursuant to Iowa Code section 318.3 under the circumstances of this case. Therefore, we affirm the district court's dismissal of this claim. However, the district court erred in concluding Kaczinski and Lockwood owed the Thompsons no common law duty. As a reasonable fact finder could conclude the Thompsons' injuries and

damages were within the scope of the risk of Kaczinski and Lockwood's acts or omissions, the district court erred in resolving the scope of liability question as a matter of law. Accordingly, we reverse the district court's dismissal of this claim and remand this case for trial.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Cady, J., who concurs specially and Streit, J., who takes no part.

**CADY, Justice (specially concurring).**

I concur with the result reached by the majority, but write separately to express two brief points.

First, the majority holds that the defendants had a common-law duty to reasonably secure outdoor personal property from being displaced by the wind. While I agree with the holding, I believe it should be narrowly construed to the facts of this case. A narrow construction is necessary because there may be a point when public-policy considerations would intervene to narrow the duty to exclude some items of personal property placed or kept by homeowners and others outside a home, such as patio and deck furniture and curbside waste disposal and recycling containers.

Second, the majority utilizes a causation or scope-of-liability analysis to deny summary judgment on the basis that a "reasonable fact finder could determine [the defendants] should have known . . . a strong gust of wind could displace the unsecured trampoline . . . and endanger motorists." Yet, they identify no facts or offer any common knowledge to explain such a conclusion. All that is known from the summary judgment proceeding is the trampoline was "disassembled" and "placed" in the yard. In truth, there are no facts in the record at this point to show or explain how the wind could have moved the trampoline. Moreover, without such facts, the incident cannot be explained by common knowledge. Consequently, the absence of such facts or common knowledge, not an unsupported conclusion, should supply the reason to deny summary judgment.

Summary judgment can only be granted when the facts are clear and undisputed. *Griglione v. Martin,* 525 N.W.2d 810, 813 (Iowa 1994)

(stating parties must establish the undisputed facts compelling a particular outcome under controlling law). If the facts, disputed or undisputed, showed the trampoline in this case was positioned in the yard in such a way that a reasonable person with common knowledge could understand that wind could enter under the trampoline tarp and lift the trampoline, then a reasonable fact finder could determine the incident was within the range of harms of leaving a trampoline in the yard to support causation or scope of liability. On the other hand, if the undisputed facts showed the trampoline tarp was attached to the metal ring and positioned flat on the ground, a court may very well be justified in concluding the incident was not within the risks of leaving a trampoline in the yard. Thus, summary judgment should be denied in this case because the facts are unclear and uncertain. It is inappropriate for a court to make a legal determination that a reasonable person should have known or appreciated the ability of wind to lift and carry a trampoline without knowing the particular facts and circumstances.