# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| IN RE ASBESTOS LITIGATION: | ) | |
| | ) | |
| MICHAEL JAMESSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REICHHOLD, INC., | ) | C.A. No. 12C-03-149 ASB |
| | ) | |
| and | ) | |
| | ) | |
| GENERAL ELECTRIC CO., | ) | |
| | ) | |
| Defendants, | ) | |
| | | |
| ROGER GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11C-09-132 ASB |
| | ) | |
| REICHHOLD, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | | |
| ANNA ROSE HARTGRAVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09C-07-303 ASB |
| | ) | |
| REICHHOLD, INC., | ) | |
| | ) | |
| Defendant, | ) | |

YVONNE WEAVER,                    )
                                 )
                    Plaintiff,   )
                                 )
v.                               )        **C.A. No. 09C-02-063 ASB**
                                 )
**REICHHOLD, INC.,**             )
                                 )
                    Defendant.   )

Submitted: July 24, 2014
Decided: August 21, 2014

## MEMORANDUM OPINION AND ORDER

*Upon Defendants, Reichhold, Inc.'s and General Electric Co.'s,*
*Motions for Summary Judgment,*
**GRANTED IN PART AND DENIED IN PART**.

Raeann Warner, Esquire, Elizabeth Lewis, Esquire, Jacobs & Crumpler, P.A., Wilmington, Delaware, David C. Thompson, Esquire, David C. Thompson, P.C., Grand Forks, North Dakota, Attorneys for Plaintiffs.

Margaret E. Juliano, Esquire, Obermayer Rebmann Maxwell and Hippel, LLP, Wilmington, Delaware, Robert E. Thackston, Esquire, Susan E. Egeland, Esquire, and Todd A. Martin, Esquire, Hawkins Parnell Thackston & Young LLP, Dallas, Texas, Attorneys for Defendant Reichhold, Inc.

Beth E. Valocchi, Esquire, Allison L. Texter, Esquire, Swartz Campbell, LLC, Wilmington, Delaware, Attorneys for Defendant General Electric Co.

**WALLACE, J.**

## I. INTRODUCTION

These actions arise from alleged exposure of four separate Plaintiffs — Michael Jamesson ("Mr. Jamesson"), Roger Gordon ("Mr. Gordon"), Anna Rose Hartgrave ("Ms. Hartgrave") and Yvonne Weaver ("Ms. Weaver") (collectively "Plaintiffs") — to asbestos-containing products produced and/or supplied by Defendants Reichhold, Inc. ("Reichhold") and General Electric Co. ("GE")[1] (collective "Defendants"). Plaintiffs' exposure to asbestos-containing materials allegedly occurred during the various time periods that they worked for Square D Company ("Square D") (n/k/a Schneider Electric) at its Cedar Rapids, Iowa plant. After a careful review of the record, including Plaintiffs' supplemental expert reports and affidavits, the Court **GRANTS** both Defendants summary judgment as to Messers. Jamesson's and Gordon's claims and **DENIES** Defendant Reichhold's request for summary judgment as to Ms. Hartgrave and Ms. Weaver.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. The Square D Cedar Rapids Plant

The Square D Cedar Rapids plant manufactured and assembled electrical circuit breakers. Beginning in approximately 1958, some of the component parts

---

[1] Mr. Jamesson is the sole Plaintiff here alleging exposure to any GE asbestos-containing product.

[2] Where there is a factual dispute, all reasonable inferences have been resolved in favor of the non-moving parties – here Plaintiffs. *Herring v. Ashland, Inc.*, 2008 WL 4444555, at \*2 (Del. Super. Ct. Oct. 1, 2008); *In re Asbestos Litig.*, 509 A.2d 1116, 1122 (Del. Super. Ct. 1986).

for the circuit breakers were fabricated using various molding compounds, some of which unquestionably contained asbestos. The circuit breakers were assembled in Square D's molding department by automatic, semi-automatic or manual hydraulic presses.[3]

The automatic presses ran on a cycle, and would do so throughout an entire shift with little handwork required. The manual presses required an employee – usually a female plant employee – to open and close the presses to remove completed parts and refill the compound material.[4] Employees would not have to manually open and close semi-automatic presses, as those also operated on a timer; but the workers would have to remove the finished part, blow off any residue ("flash"), and refill the molding compound to reset the machine.[5] At the time of the Cedar Rapids plant's peak performance, there were approximately fifty-five automatic presses and eighteen semi-automatic or manual presses. The entirety of the plant was approximately 112,000 square feet.

The different types of presses were grouped by like kind and those groupings were usually separated in the plant by large vinyl curtains. The automatic presses were large and varied in size, weighing from twenty tons to

---

[3]      Pltf Hartgrave's Opp. to Reichhold's MSJ, Ex. B, Deposition of William Hodina, Sept. 17, 2012, 34:11-35:13.

[4]      *Id.* at 35:5-13.

[5]      *Id.* at 35:14-24.

approximately three hundred tons and were roughly four feet wide by seven or eight feet tall.[6] The manufacturing area was separated from other areas of the plant – such as the tool room, the receiving dock, or the punch press area – by cement block walls.

Reichhold manufactured chrysotile asbestos-containing molding compounds from about 1964 to 1980. Reichhold also produced asbestos-free compounds during the same time period.

During the periods in question here, GE produced both an asbestos-containing phenolic molding compound – bearing the designation "GE 12983" – as well as non-asbestos alternatives. There are no existing records evidencing a purchase of GE asbestos-containing material by Square D. Nor are there any records demonstrating any shipment of asbestos-containing material from GE to the Cedar Rapids plant.

William Vosdingh, a molding process engineer at the Cedar Rapids plant, testified that he recalled only asbestos-free GE molding compounds during his time with Square D.[7] GE stopped manufacturing asbestos-containing compounds altogether by 1972. Both the asbestos-containing and asbestos-free molding compounds produced by GE resembled black pellets. Mr. Jamesson, the only

---

[6]  *Id.* at 38:8-41:18.

[7]  GE MSJ, Ex. C, Deposition of William Vosdingh, Nov. 30, 2011, 205:21-206:8.

Plaintiff to bring action against GE, never recalled seeing any GE products during his time at Square D.[8]  And he further testified that he could never determine by sight whether a particular molding compound contained asbestos.[9]

The molding department was a story and a half high and contained about thirty-six automatic presses.  No fewer than seven different molding compounds were used in the presses, including Reichhold brand.[10]

Reichhold product designation 25310 ("Reichhold 25310") – an "asbestos-containing phenolic molding compound"[11] – was commonly used in the industry to manufacture circuit breaker bases and covers,[12] though it is likely that Reichhold products made up but a small percentage of the total molding compound used at the Cedar Rapids plant.  That said, the Reichhold 25310 was shipped to Square D in 50-pound tan bags, forty bags to a pallet.[13]  Those bags bore Reichhold's name in red lettering.  The molding compound was granular, similar to coarse sand.  A forklift would lift a full pallet of molding compound ten or twelve feet off the

---

[8]     GE's MSJ, Ex. B, Deposition of Michael Jamesson, Aug. 20, 2013, 52:5-16; 104:1-10.

[9]     *Id.* at 52:17-22.

[10]    Pltf Weaver's Opp. to Reichhold's MSJ, Ex. I, Deposition of Thomas R. Madden, Feb. 14, 2012, 202:16-203:13.

[11]    Pltf Hartgrave's Opp. to Reichhold's MSJ, Ex. B, Deposition of William Hodina, Sept. 17, 2012, 42:25-44:25.

[12]    *Id.* at 60:1-17.

[13]    *Id.* at 50:1-16.

ground, and a plant worker would cut the sacks, dumping the compound into a press's hopper.[14] Twenty-eight presses were filled that way each work shift; other presses were filled multiple times throughout a shift.

The process of filling a press with molding compound created airborne dust. This dust had the appearance of a "blue haze" and would remain in the air for several hours after each round of compound was dumped into the presses' hoppers.[15] More than a hundred fans were located throughout the molding department and they blew the dust around that entire area. This dust was circulated further when the presses were opened at the end of a cycle and the machines were cleaned off with air hoses and brooms.[16] Significant amounts of dust would accumulate in the molding department from the operation and cleaning of the presses. That dust often collected on pipes, beams, and light fixtures throughout that department's worksite.[17] During shifts, the dust was so prevalent that clothing would be permanently stained black. And employees would expectorate residue long after a shift had ended.[18]

---

[14]    *Id.* at 54:2-14.

[15]    *Id.* at 58:15-59:12.

[16]    *Id.* at 66:14-67:24; 69:18-70:21.

[17]    Pltf Weaver's Opp. to Reichhold's MSJ, Ex. C, Deposition of Lawrence McGurk, Nov. 29, 2011, 50:3-23.

## B. Michael Jamesson

Michael Jamesson was diagnosed with lung cancer. Mr. Jamesson was a smoker for approximately fifty years, which all agree was a substantial contributing factor to his cancer.[19] He began as a laborer at the Cedar Rapids plant in 1968 and remained in that position for about a year. As a laborer, Mr. Jamesson was responsible for cleaning up all areas of the plant and performing any other tasks that were required, such as rearranging shelving or other configurations of equipment at the plant.[20] After his one year as a laborer, Mr. Jamesson moved into the shipping and receiving department. He remained there for approximately ten years. In shipping and receiving, Mr. Jamesson was responsible for receiving incoming packages, stocking products after delivery, and transporting products to the various other departments, including the molding areas.[21] The only molding product manufacturer that Mr. Jamesson recalled was Plenco.[22] Mr. Jamesson also worked for approximately one year in the plating department, though he stated that he did not believe that he was exposed to asbestos during his time there.[23]

---

[18]    *Id.* at 34:4-14; 49:4-25.

[19]    Def Reichhold's MSJ, Ex. V, Medical Report of Jerrold L. Abraham, M.D., May 1, 2013.

[20]    GE's MSJ, Ex. B, Deposition of Michael Jamesson, Aug. 20, 2013, 36:15-37:18.

[21]    *Id.* at 37:22-38:3.

[22]    *Id.* at 38:4-6.

## C. Roger Gordon

Roger Gordon was Mr. Jamesson's supervisor for approximately six months when Mr. Jamesson began working at the Cedar Rapids plant in 1968. No additional evidence has been produced concerning where Mr. Gordon worked while at Square D or any instances – if there are any – in which he may have been exposed to any asbestos-containing product attributable to either Defendant.

## D. Anna Rose Hartgrave

Anna Hartgrave died of lung cancer in 2009. She was a smoker for approximately thirty years, which was a factor in her development of lung cancer. Ms. Hartgrave did not give a deposition in this case, but evidence of her work history has been derived from co-worker testimony. Ms. Hartgrave worked at Square D from 1962-1982 and held a variety of jobs: Bakelite part cleaner machine operator, metal punch press department worker, and molding department worker.[24]

---

[23] *Id.* at 40:4-24; 50:13-18.

[24] Reichhold's MSJ, Ex. D, Deposition of Sandra Brown, 39:14-40:19; Reichhold's MSJ, Ex. F., Deposition of Karl Kistler, Aug. 9, 2011, 28:18-20; Pltf Hartgrave's Opp. to Reichhold's MSJ, Ex. C, Deposition of Roy Duncan, May 1, 2012, 31:1-16; 71:18-22 (Mr. Duncan recalled someone named "Anna Hartman," not "Anna Hartgrave," who worked in the cleaning and molding departments.); Pltf Weaver's Opp. to Reichhold's MSJ, Ex. C, Deposition of Lawrence McGurk, Nov. 29, 2011, 57:15-21.

**E. Yvonne Weaver**

Yvonne Weaver died of lung cancer in 2008. Weaver also was a smoker; she for approximately fifty years. And her smoking also was a factor in her development of lung cancer. She worked as a phenolic molding machine operator from the time she started at Square D in 1957 until her retirement approximately forty years later. Ms. Weaver worked with the larger manual molding machines – a job that, back then, was reserved primarily for the plant's female employees. She worked in the punch press room and the plating department as well.[25]

## III. LEGAL STANDARD

"Under the rule now well established in this jurisdiction, there is no 'right' to a summary judgment. Unless th[is] [ ] Court is reasonably certain that there is no triable issue, it is within the [ ] Court's discretion to decline to decide the merits of the case in a summary adjudication, and to remit the parties to trial. No right is thereby violated, the seemingly mandatory language of [Superior Court Civil] Rule 56 notwithstanding."[26]

Summary judgment should be granted under Rule 56, however, upon a showing that "there is no genuine issue as to any material fact and that the moving

---

[25] Pltf Weaver's Opp. to Reichhold's MSJ, Ex. C, Deposition of Lawrence McGurk, Nov. 29, 2011, 38:17-39:7; 57:7-14.

[26] *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969) (internal citations omitted); *Empire of America v. Commercial Credit*, 551 A.2d 433, 435 (Del. 1988) (citing *Cross*, 258 A.2d at 278) ("There is no right to summary judgment.").

party is entitled to judgment as a matter of law." [27] But summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[28] In considering a summary judgment motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[29]

When deciding a summary judgment motion, the Court must identify disputed factual issues whose resolution is necessary to decide the case, but the Court must not decide those issues.[30] Instead, the Court must evaluate all facts in a light most favorable to the non-moving party, and determine whether there is a genuine issue of material fact requiring a trial.[31] And summary judgment is inappropriate where the record reasonably indicates that material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it.

---

[27] Super. Ct. Civ. R. 56(c).

[28] *Ebersole v. Lowengrub*, 180 A.2d 467, 469 (Del. 1962).

[29] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super Ct. 1986).

[30] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (1992).

[31] *Id.*

But as the Delaware Supreme Court has recently observed in *Edmisten v. Greyhound Lines, Inc.*:[32]

> Viewing the facts and reasonable inferences in the light most favorable to the non-moving party, if an essential element of the non-movant's claim is unsupported by sufficient evidence for a reasonable juror to find in that party's favor, then summary judgment is appropriate. In asbestos-related products liability tort litigation, the plaintiff's threshold burden is to show that a particular defendant's asbestos containing product was [the cause of his harm].[33]

Any inferences which are to be drawn in favor of the non-moving party must be based upon sufficient facts, such that the inference does not rise to the level of mere surmise, conjecture or speculation. This Court explained this most succinctly in *In re Asbestos Litigation (Helm)*:[34]

> The Court must decline to draw an inference for the non-moving party if the record is devoid of facts upon which the inference reasonably can be based. "Where there is no precedent fact, there can be no inference; an inference cannot flow from the nonexistence of a fact, or from a complete absence of evidence as to the particular fact." Nor can "[a]n inference [ ] be based on surmise, speculation, conjecture, or guess, or on imagination or supposition."[35]

---

[32]    2012 WL 3264925 (Del. Aug. 13, 2012).

[33]    *Id.* at *2 (internal citations omitted).

[34]    2007 WL 1651968 (Del. Super. Ct. May 31, 2007) *as corrected* (June 25, 2007).

[35]    *Id.* at *16 (quoting 32A *C.J.S. Evidence* § 1341 at 763 (1996)).

## IV.  DISCUSSION

### A. Proximate Cause

Iowa substantive law applies here.[36]  Under Iowa law, "a plaintiff in a products liability case must prove that the injury-causing product was a product manufactured or supplied by the defendant."[37]  Iowa has expressly rejected market share liability, reasoning that it would be inequitable to require manufacturers "to pay or contribute to payment for injuries which their product may not have caused."[38]  An asbestos plaintiff bears the burden of establishing a causal connection between the defendant's alleged negligence and the injuries he or she suffered.[39]  "The conduct of a party is a proximate cause of damages when it is a substantial factor in producing damages and when the damages would not have happened except for the conduct."[40]  Of course, questions of proximate cause are *generally* reserved for the jury.[41]

---

[36]    Order Granting Def's Mot. to Establish Applicable Law (Trans. I.D. 54733034); Memorandum of Plaintiff Jamesson in Opposition to Def. Reichhold, Inc.'s MSJ, at 7 (Trans. I.D. 54931286); Memorandum of Plaintiff Weaver in Opposition to Def. Reichhold, Inc.'s MSJ, at 7 (Trans. I.D. 43507439).

[37]    *Mulcahy v. Eli Lilly & Co.*, 386 N.W.2d 67, 76 (Iowa 1986).

[38]    *Id.*

[39]    *Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994).

[40]    *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 323 (Iowa 1992) (citing I Iowa Civil Jury Instructions 700.3 (1991)).

Iowa has adopted the causation standard found in the Restatement (Third) of Torts: Liability for Physical Harm.[42] In applying the Restatement (Third) standard, Iowa courts recognize that in most cases involving physical harm a reasonable duty of care exists; it is for the fact-finder, therefore, "to consider the specific facts and circumstances to determine if the actor breached the duty."[43]

And Iowa courts have recognized the utility of the *Lohrmann*[44] standard – *i.e.*, the oft-utilized frequency, regularity, and proximity test – for determining, in asbestos-exposure cases, the sufficiency of the evidence in order to satisfy the substantial factor requirement. But they have refused to apply *Lohrmann* as "a minimum threshold level of proof required under each prong."[45] Rather, under Iowa law, evidence of exposure is legally sufficient to support a finding of substantial factor on a fact-specific basis; a determination that:

> involves the interrelationship between the use of a defendant's product at the workplace and the activities of the plaintiff at the workplace. This requires an understanding of the physical characteristics of the workplace and of the relationship between the

---

[41]     *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 254 (Iowa 1993).

[42]     *Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009).

[43]     *Feld v. Borkowski*, 790 N.W.2d 72, 76 (Iowa 2010) (citing *Thompson*, 774 N.W.2d at 834-35).

[44]     *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1162-63 (4th Cir. 1986) (articulating a frequency, regularity, and proximity test).

[45]     *Spaur*, 510 N.W.2d at 859.

- 12 -

activities of the direct users of the product and the bystander plaintiff. Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product.[46]

This Court, when previously applying Iowa's standard, articulated a number of factors that may be relevant, including: the nature of the product; the frequency of its use; the proximity, both in physical distance and temporal relation, of a plaintiff to the product; the regularity of the product's use; the physical layout of the location where the product was used, including the presence and location of walls or other barriers; and the "sheer quantity" of the product present.[47]

## B. Insufficient GE Product Identification

Michael Jamesson is the only plaintiff who alleges exposure to GE asbestos-containing products. During his deposition testimony, Mr. Jamesson admitted that he did not recall seeing GE's name on any product that he was exposed to. There is no evidence in the record revealing: (1) the quantity of any GE products allegedly present at the Cedar Rapids plant; (2) whether any GE products that may have been present there contained asbestos; or (3) to what degree – if at all – Mr. Jamesson was exposed to any GE product. In turn, an essential element of his

---

[46] *Id.* (citation omitted).

[47] *Heddinger v. Ashland Oil, Inc.*, 2012 WL 1142938, at *5 (Del. Super. Ct. Jan. 13, 2012).

claim lacks sufficient evidentiary support for a reasonable juror to find in his favor.[48]

While plaintiffs are always entitled to all reasonable inferences upon a summary judgment motion, "[t]he Court must decline to draw an inference for the non-moving party if the record is devoid of facts upon which the inference reasonably can be based."[49] Just so here. Mr. Jamesson has failed to produce *any* probative evidence demonstrating *any* exposure to a GE asbestos-containing product, let alone show that his lung cancer was caused by a GE product. It being Mr. Jamesson's threshold burden to show that a GE product caused his harm, the failure to do so warrants summary judgment.[50] And so, GE's Motion for Summary Judgment must be **GRANTED**.

### C. Sufficient Product Identification and Nexus - Anna Rose Hartgrave and Yvonne Weaver

Viewing the facts in the light most favorable to the non-moving plaintiffs, it appears clear that Ms. Hartgrave and Ms. Weaver each experienced significant dust exposure from various molding compounds over the course of decades of combined employment at Square D. As a result, Ms. Hartgrave and Ms. Weaver

---

[48]     *Edmisten*, 2012 WL 3264925 at *2.

[49]     *In re Asbestos Litigation (Helm)*, 2007 WL 1651968 at *16.

[50]     *Edmisten*, 2012 WL 3264925 at *2.

worked extensively with and around asbestos material and respirable dust created from asbestos-containing molding compounds, some of which Reichhold supplied. Both worked long-term in the molding department, specifically working with manual molding presses that were then-reserved for the female employees. In order to operate these presses, Ms. Hartgrave and Ms. Weaver were required to open the presses, remove finished products, and manually load the presses with molding compound. At the completion of each cycle, the operators would additionally have to clean the individual finished pieces by blowing off the "flash" or residual material. This process created respirable dust that each was exposed to. In addition to the exposure from their own machines, these manual presses were adjacent to the automatic press area. There airborne dust was commonly present and was constantly circulated and re-circulated by the dozens and dozens of fans present in the molding department.

Under Iowa law, the *Lohrmann* three-part standard is not a rigid standard, rather it is a consideration for the Court when making its broader fact-specific inquiry into the sufficiency of the evidence of exposure to a specific product as a substantial factor.[51] While the *direct* evidence of exposure by Ms. Hartgrave and Ms. Weaver to Reichhold's products may be thin, the Court cannot end the inquiry there. Rather, it must also consider their proximity to the product, the total

---

[51] *Spaur*, 510 N.W.2d at 859.

duration of their exposure, and the layout of the plant.[52]  Upon a careful review of the entirety of the record, including deposition testimony regarding the layout of the plant and co-workers' recollections of the details of Ms. Hartgrave's and Ms. Weaver's employment, there is sufficient evidence of exposure to Reichhold's asbestos-containing product such that the Court is not "reasonably certain that there is no triable issue" and the Court will therefore exercise its discretion "to decline to decide the merits of [their] case[s] in a summary adjudication."[53] Applying the fact-specific Iowa causation standard, the evidence in the record satisfies Ms. Hartgrave's and Ms. Weaver's burden at this summary judgment stage.  Put simply, there remain genuine issues of material fact regarding both product identification and product nexus such that Reichhold has failed to demonstrate that it is entitled to judgment as a matter of law.[54]

---

[52]     *Id.*; *Heddinger*, 2012 WL 1142938, at *5.

[53]     *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1891000, at *6 (Del. Super. Ct. March 31, 2014) (quoting *Cross*, 258 A.2d at 278).

[54]     Reichhold urges the Court to adopt its interpretation of the factual record.  Plaintiffs' and Reichhold's competing factual interpretations derive from differing historical witness recollections of the presence of and Plaintiff Weaver's and Plaintiff Hartgrave's exposure to—or lack thereof—Reichhold's allegedly asbestos-containing material.  To reach the conclusion that Reichhold urges, however, the Court would have to engage in a fundamental determination of the credibility of each side's respective witnesses, an endeavor not permitted at the summary judgment stage.  *See Cerberus Int'l, Ltd. V. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002); *Nationwide Gen. Ins. Co. v. Mendes*, 2007 WL 1748651, at *3 (Del. Super. Ct. May 31, 2007).  The necessity of a credibility determination in order to grant Reichhold's summary judgment motions as they pertain to Plaintiff Weaver and Plaintiff Hartgrave further make summary judgment inappropriate.

Reichhold's Motions for Summary Judgment as to Plaintiff Hartgrave and Plaintiff Weaver are, therefore, **DENIED**.

### D. Insufficient Product Nexus - Michael Jamesson

During Mr. Jamesson's time at Square D, by his own account, his exposure to any asbestos-containing material was sporadic and minimal. His first year at the Cedar Rapids plant was spent as a laborer, cleaning and performing miscellaneous other tasks throughout the entire plant. For the following decade, Mr. Jamesson worked in shipping and receiving, cataloguing incoming packages, stocking materials, and making deliveries to various departments. He recalled exposure to only a single brand of molding compound, Plenco, and cannot recall any exposure to a Reichhold product. This is unsurprising; the uncontroverted evidence is that Reichhold was a minor supplier to the Square D plant as a whole.

Mr. Jamesson's alleged exposure to any molding compound was admittedly neither frequent nor regular. He did not work in an area of the plant that commonly experienced respirable dust from such, and the layout of the plant insulated him from any regular exposure. In turn, Mr. Jamesson fails to demonstrate, even under the flexible Iowa standard, exposure to any Reichhold

product, much less that such a product was a substantial factor in causing his illness.[55]

Reichhold's Motion for Summary Judgment as to Mr. Jamesson is, in turn, **GRANTED**.

### E. Insufficient Product Nexus - Roger Gordon

Beyond a single statement that "[Mr.] Gordon . . . was Michael Jamesson's supervisor for six months when Mr. Jamesson began working at the Square D Cedar Rapids plant in 1968," Roger Gordon failed to introduce any evidence that could support a reasonable inference that he was exposed to a Reichhold asbestos-containing compound.[56] No evidence has been provided to detail Mr. Gordon's work history, his duties at the Square D plant, or to what degree he could have been exposed to any asbestos-containing material. Plaintiff asks the Court to rely on surmise to divine Mr. Gordon's alleged damaging exposure from the simple statement that he supervised Mr. Jamesson (whose own evidence of exposure to asbestos-containing materials the Court just above found lacking) for a six-month

---

[55] *See Herring*, 2008 WL 4444555, at *2 ("All reasonable inferences go in favor of the non-moving party at the summary judgment stage of the proceedings; however there must still be "substantial support" for such inferences in the record.").

[56] In fact, in Mr. Gordon's 11-page "Memorandum [] in Opposition to Motion by Defendant Reichhold, Inc. for Summary Judgment" (Trans. I.D. 54931445), this is the *sole reference to Mr. Gordon.* The rest of the 11-page memorandum is devoted to a recitation relating to Mr. Jamesson, Mr. Jamesson's employment history, Mr. Jamesson's alleged exposure to asbestos-containing material, and arguments as to why a summary judgment motion against *Mr. Jamesson* should fail. No similar evidence or arguments are offered regarding Reichhold's motion for summary judgment on Mr. Gordon's claims.

period in 1968. This falls far short of meeting Plaintiff's burden, and therefore Reichhold's Motion for Summary Judgment as to Mr. Gordon must be **GRANTED** also.

## V.  CONCLUSION

For the foregoing reasons, Defendant General Electric Co.'s Motion for Summary Judgment is **GRANTED**; Defendant Reichhold's Motions for Summary Judgment as they pertain to Plaintiffs Roger Gordon and Michael Jamesson are **GRANTED**; Defendant Reichhold's Motions for Summary Judgment as they pertain to Plaintiffs Anna Hartgrave and Yvonne Weaver are **DENIED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
Paul R. Wallace, Judge

Original to Prothonotary
cc:    Counsel via File & Serve