# IN THE COURT OF APPEALS OF IOWA

No. 16-1374
Filed June 21, 2017

**ALEX L. BENNINGHOVEN and BRYAN T. SLOAN,**
        Plaintiffs-Appellants,

**vs.**

**HAWKEYE HOTELS, INC., DM RIVER LODGING, INC., and HAWKEYE HOTELS HOSPITALITY MANAGEMENT, INC.,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.


        The plaintiffs appeal the district court's grant of summary judgment in favor of the defendants.  **AFFIRMED.**



        Mark J. Wiedenfeld of Elverson Vasey, L.L.P., Des Moines, for appellants.

        Joel T. S. Greer of Cartwright, Druker & Ryden, Marshalltown, for appellees.



        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

The plaintiffs, Alex Benninghoven and Bryan Sloan, appeal the district court's grant of summary judgment in favor of the defendants, Hawkeye Hotels, Inc., DM River Lodging, Inc., and Hawkeye Hotels Hospitality Management, Inc. The plaintiffs argue the defendants breached their duty of reasonable care owed to hotel guests in hiring Michael Morrow without discovering Morrow's criminal history. The plaintiffs were hotel guests and were assaulted by Morrow after Morrow's shift was over and they were all off premises. Because we agree the hotel's liability does not extend to criminal conduct of an employee who was off duty and off premises under these facts, we affirm.

**I. Background Facts and Proceedings.**

These facts are not in dispute. The defendants are the owners and managers of the Residence Inn Hotel located in downtown Des Moines near the Court Avenue entertainment district. Morrow was employed as a desk clerk at the Residence Inn Hotel, checking guests in and out.

On April 4, 2014, Morrow applied and was hired to work for defendants. Morrow filled out an employment application with the defendants on that date in which he denied any criminal convictions (excluding traffic accidents). However, between July 27, 2010, and April 4, 2014, Morrow had numerous criminal convictions, including various misdemeanor offenses including theft, operating while intoxicated, unauthorized use of a credit card, criminal trespass, and criminal mischief. He also had two misdemeanor assault convictions—one for domestic assault and one for assault causing bodily injury.

The defendants' general manager, Daryl Rixman, acknowledges a background check was conducted, including a check of Iowa Courts Online. However, Morrow's convictions for assault were not discovered.

On May 24, 2014, Alex L. Benninghoven and Bryan T. Sloan (the plaintiffs) visited Des Moines to celebrate Sloan's bachelor party. They checked into the Residence Inn at about 2:30 p.m. Morrow greeted them, checked them in, and escorted them to their rooms. At their request, Morrow gave the plaintiffs recommendations regarding nearby bars. The plaintiffs attended a baseball game later in the evening, then returned to the hotel where they again spoke to Morrow about which bars they planned on patronizing.

At around 2:30 a.m. on May 25, 2014, the plaintiffs were walking back to the hotel from the entertainment district. As they passed by an alley, about a block away from the hotel, Morrow called out to them from the alley where he was standing with a group of people. The plaintiffs recognized Morrow and walked over to join him. The plaintiffs aver they would not have approached the group had they not recognized Morrow from the hotel.

A vehicle occupied by some women drove up. After a disagreement about Sloan talking with the women in the vehicle, Morrow and Sloan began to scuffle and the encounter escalated into a violent assault of the plaintiffs by Morrow and the group. Sloan was knocked unconscious and his wallet and phone were stolen. Benninghoven was also knocked unconscious.

The plaintiffs filed a petition against the defendants, stating claims of general negligence and a claim of negligent hiring and retention. The specifications of negligence under the general negligence claim include: failing to

perform an adequate criminal background check when hiring its employee Morrow; hiring Morrow when he had a criminal background including a history of violent crime; placing Morrow in a position in the hotel that represents to guests that he is a person whom guests can trust; retaining Morrow in this position despite Morrow's criminal and violent background; and failing to properly train Morrow concerning interactions with guests including while off duty. Under the negligent-hiring claim, the plaintiffs assert the defendants were negligent in hiring and retaining Morrow when they knew, or in exercise of ordinary care should have known, of his dangerous characteristics as demonstrated by his criminal history.

The defendants filed a motion for summary judgment, asserting they owed no duty to the plaintiffs for intentional torts committed by an employee who is off duty and off property. They also asserted the intentional torts committed by the employee off duty and off property were not foreseeable as a matter of law.

The defendants' employee policies, signed by Morrow, include the following:

> The following are examples of conduct not tolerated by this corporation and will be considered just cause for punishments of written reprimand and/or including immediate dismissal.
> 1. Falsification or alteration of company records or documents.
> . . . .
> 4. Threatening, intimidating, or coercing guests or employees.
> 5. Harassing guests or employees.
> . . . .
> 27. Engaging in activities on or off premises which could be considered a discredit to the corporation or its employees.
> . . . .
> 30. Fraternization with hotel guests.
> . . . .

35. Having a fraternization with a guest and/or an employee.

Also included in its policies is the following drug and alcohol use policy, "[E]mployees are prohibited from the off premises use of alcohol and possession, use, or sale of illegal drugs when such activities adversely affect job performance, job safety, or the Company's reputation in the community."

It is defendants' policy to check prospective employees' criminal backgrounds before deciding whether to hire them. It is standard practice in the hospitality industry for hotels to conduct background checks of prospective employees. The purpose of checking an applicant's background is to determine if the applicant has had any difficulties in the past that might affect their employment. It would not be prudent for a hotel to hire someone to work at the front desk if that person had a history of making bad decisions or had a history of being unable to control their temper or emotions. It would not be prudent for a hotel to hire someone to work at the front desk if that person had a history of violence or of attacking people.

Hotel manager Rixman and assistant manager Curtis Agan both stated they did not discover Morrow's assault convictions before they hired Morrow and would not have hired Morrow if they had known of his history.

The district court concluded that an employer's lack of control over an employee's behavior when the employee is not working and not on the employer's premises is a situation imposing no duty on the employer as a matter of law because of a "countervailing principle or policy that warrants denying . . . liability." The district court explained:

In the court's view, an equally strong, if not stronger, policy argument lies in the fact that the plaintiffs seek to impose a duty on the defendants for conduct over which they have no control. Lack of control of the mechanism causing the injury may be a basis upon which to find a defendant has no duty. *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 372-73 (Iowa 2012). Here, there is no evidence that the defendants had the ability to, or did, exercise any control over Morrow's behavior when he was not at work and off the hotel premises. . . .

The court concludes that an employer's lack of control over an employee's behavior when the employee is not working and not on the employer's premises is a "countervailing principle or policy [that] warrants denying . . . liability", . . . in cases of harm inflicted by an employee while off duty and off the employer's premises.

The result is no different under the plaintiffs' negligent hiring and negligent supervision claims because the employer's liability under such claims is premised on a connection between the injury and the employment.

The court further concluded Morrow's conduct was outside the scope of the defendants' liability for negligent hiring because he was off duty and off the hotel premises when the incident happened under the facts presented. Finally, the court found that Morrow's conduct was so far outside any relevant connection to his employment that his assault of the plaintiffs was outside the scope of the defendants' liability for the alleged negligence in hiring Morrow. The court granted the defendants summary judgment, and the plaintiffs appeal.

**II. Scope and Standard of Review.**

We review a district court ruling on summary judgment for correction of errors at law. Summary judgment is appropriate when the moving party demonstrates "there are 'no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.'" "A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved. When a fact's determination might affect the outcome of the suit, it is material."

*Estate of Gottschalk by Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 584 (Iowa 2017) (citations omitted).

"It is well-settled that 'questions of negligence or proximate cause are ordinarily for the jury,' and 'only in exceptional cases should they be decided as a matter of law.'" *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009) (citation omitted).

## III. Discussion.

The district court granted the defendants summary judgment concluding as a matter of law they owed no duty to plaintiffs for the actions of an employee committed off the employer's premises and on the employee's own time. Our courts have not previously drawn this bright line, and plaintiffs argue it was error for the district court to do so.

"An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" *Id.* at 834 (citation omitted). "Whether a duty arises out of a given relationship is a matter of law for the court's determination." *Id.*

Generally, a person owes a general duty of care under the Restatement (Third) of Torts [hereinafter Restatement (Third)], section 7(a) if their conduct creates a risk of physical harm. *See id.* at 834 ("[I]n most cases involving physical harm, courts 'need not concern themselves with the existence or content of this ordinary duty,' but instead may proceed directly to the elements of liability set forth in section 6." (citing Restatement (Third) of Torts: Liab. For Physical and Emotional Harm § 6 cmt. f, at 69 (Am. Law Inst. 2010)).

However, the court in *Thompson* observed:

> [I]n exceptional cases, the general duty to exercise reasonable care can be displaced or modified. [Restatement (Third)] § 6 cmt. f, at 81–82. An exceptional case is one in which "an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases." *Id.* § 7(b), at 90. In such an exceptional case, when the court rules as a matter of law that no duty is owed by actors in a category of cases, the ruling "should be explained and justified based on articulated policies or principles that justify exempting [such] actors from liability or modifying the ordinary duty of reasonable care." *Id.* § 7 cmt. j, at 98. Reasons of policy and principle justifying a departure from the general duty to exercise reasonable care do not depend on the foreseeability of harm based on the specific facts of a case. *Id.* "A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination." *Id.*

774 N.W.2d at 835.

Iowa also recognizes an affirmative duty for negligent hiring, training, supervision, and retention. *See Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 776 (Iowa 2013) (adopting affirmative duties under chapter 7 of Restatement (Third)); *see also* Restatement (Third) §§ 7(a), 41. "[A]n employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public." *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999).

The plaintiffs argue that under the analytical framework set out in the Restatement (Third) and *Thompson*, the defendants owe a general duty under Restatement (Third) section 7(a) and an affirmative duty under section 41 as an employer in hiring, training, supervising, and retention with respect to Morrow because their conduct of negligently hiring Morrow—who had a knowable history of assaultive behavior—created a risk of physical harm to hotel guests. They assert the appellate courts have not and should not adopt the bright-line rule applied by the district court, which denies liability for employee actions that occur

off site and off duty. They maintain such cases should be handled on a case-by-case basis under section 6 of the Restatement (Third). Plaintiffs also contend the defendants' breach of duty was within the scope of liability and the plaintiffs' injuries were foreseeable.

In *Godar*, the court approved the following test:

> [I]n order to recover based on a claim of negligent hiring, a plaintiff must prove the following:
> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

558 N.W.2d at 708-09.

This court has held an employer may be liable for an employee's acts occurring while the employee is off duty. *Jean v. Hy-Vee, Inc.*, No. 12-0246, 2012 WL 5539738, at *8 (Iowa Ct. App. Nov. 15, 2012) ("[W]hether Lewis [the employee] was acting within the scope of his employment is not a factor to consider in a negligent training, supervision, and regulation claim. Instead, the question is (1) whether Lewis was acting tortiously, and if so, (2) whether Hy–Vee's negligence in training, supervising, or regulating him facilitated his wrongful conduct."). In *Jean*, we reversed the district court's summary judgment in favor of the employer on a third-party's negligent training, supervision, and regulation claim. *Id.* at *9.

A hotel is under a duty to its guests to protect them from unreasonable risk of physical harm. Restatement (Second) of Torts § 314A (Am. Law Inst. 1965).

Because of the special relation, this duty extends "to risks arising . . . from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal. (See § 302B.)." *Id.* § 314A, cmt. d; *see also* Restatement (Third) § 40 (noting "an innkeeper with its guests" is a special relationship imposing upon the innkeeper "a duty of reasonable care with regard to risks that arise within the scope of the relationship").

One treatise observes:

> The liability of an innkeeper for injuries sustained by guests *on the innkeeper's premises* is governed by the same rules which govern other owners and occupiers of land. Generally, the innkeeper is bound to exercise reasonable care toward guests although some jurisdictions may require a higher standard of care toward guests. The hotel operator owes a guest a duty to exercise reasonable care. However, the innkeeper is not the insurer of the guest's safety nor is the innkeeper strictly liable for injuries suffered by guests when the injuries are the result of defects inherent in the fixtures or furnishings of the hotel rooms. Innkeepers also have no duty to investigate or check on their guests to determine if they are in medical need.
>
> It must also be established that the innkeeper's breach of duty was a proximate cause of the plaintiff's injury.
>
> In addition to exercising reasonable care to see that the premises are maintained in a reasonably safe condition, with regard to guests, the innkeeper also has a duty to protect a guest from the actions of third parties, including other guests and strangers *where it is within the innkeeper's power or that of the innkeeper's servants to do so.* The relationship between innkeeper and guest is considered a special relationship which gives rise to such a duty. The innkeeper may be liable for assaults of third parties upon guests where the innkeeper has reason to anticipate the assault but fails to exercise reasonable care to prevent it. However, the innkeeper is not an insurer of the invitee's safety. The same standard of care is owed by the innkeeper to the guest's own guests and invitees.

Barry A. Lindahl, *1 Modern Tort Law: Liability and Litigation* § 3:50 (2d ed. June 2016) (emphasis added) (footnotes omitted).

"[A] proprietor is liable for injuries to guests or patrons caused by accidental, negligent, or intentionally harmful acts of other guests, patrons, or third persons, if, by the exercise of reasonable diligence, he could have discovered that such acts were being done or were about to be done and *could have protected his guests or patrons by controlling the conduct of the tortfeasor or by giving adequate warning to enable the guest to avoid harm*."

*Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174, 1180 (Ala. 1995) (emphasis added) (quoting 40 Am. Jur. 2d *Hotels, Motels, & Restaurants* § 111 (1968)).

As noted by Lindahl, the hotel's liability for injuries sustained by guests is generally limited to those occurring on the premises because it is governed by the same rules that govern other owners and occupiers of land duty. *See McNeal v. Days Inn of Am., Inc.*, 498 S.E.2d 294, 296 (Ga. Ct. App. 1998) (finding trial court erred in granting summary judgment to hotel where guests injured in parking lot where "several criminal acts had previously occurred in this Days Inn parking lot and its other premises"); *Bidar v. Amfac, Inc.*, 669 P.2d 154, 159 (Haw. 1983) ("The facts recounted earlier indicate the defendant is a hotel operator and the plaintiff was a guest at its hotel. '[A]n occupier of land,' we have held, 'has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises.'"(alteration in original) (citation omitted)); *see generally* George L. Blum, Annotation, *Liability of Motel or Hotel Operator for Injury to Guest Resulting from Assault by Third Party*, 17 A.L.R. Fed. 6th 453 (2006); *cf. Belyea v. Shiretown Motor Inn, LP*, 2 A.3d 276, 279 (Me. 2010) (finding a hotel had no duty to a patron of an adjoining lounge who was injured in the hotel's parking lot and noting "the *heightened* duty owed by an innkeeper to his guest, based on a special relationship, to proactively prevent an assault on the guest if it is reasonably foreseeable").

A hotel may be liable for injuries sustained by a guest off premises, but in very limited circumstances. For example, in *Westin Operator L.L.C. v. Groh*, 347 P.3d 606, 616 (Colo. 2015), the court rejected a hotel's claim that its duty to its guest "ended 'at the property line' when she exited the hotel." While "alluring in the abstract," the hotel had evicted the guest with knowledge the guest was intoxicated. *Id.* The court stated:

> The scope of the property does not define the scope of the duty; whether the risk of harm originated during the eviction process does. The scope of the property may, however, relate to the scope of liability through the application of causation principles.
> . . . .
> An innkeeper's duty to protect its guests against an unreasonable risk of physical harm applies when "the risk of harm, or of further harm, arises in the course of th[e] relation" between the parties. Restatement (Second) of Torts § 314A cmt. c. So, in evaluating the scope of the duty here, we examine whether the risk of harm to Groh arose while she remained a guest. This begs the question of when exactly she ceased being a guest.
> We analyze Groh's eviction as a process—a series of events that began with a knock on a hotel room door and culminated with actual expulsion from the hotel. *See* Black's Law Dictionary 635 (9th ed. 2009) (defining "eviction" as "the act *or process* of legally dispossessing a person of land or rental property" (emphasis added)). The Westin started the eviction process shortly after its security guards went to Groh's room to confront the occupants about the noise level, entered the room without permission, and engaged in a heated argument with the occupants. During that confrontation, the security guards told everyone except the registered guests to leave the premises. Groh and her companions protested that they were drunk and could not drive. Aware of this intoxicated state, the guards nevertheless escorted the group outside. When one member of the group asked if they could wait in the lobby for a taxi, a guard blocked the door, barred re-entry, and told him, "No, get the f* * * out of here." The "risk of harm" to Groh arose during this eviction process, while the innkeeper-guest special relationship still existed between the Westin and Groh.

*Id.* (alteration in original); *see also Dove v. Lowden*, 47 F. Supp. 546, 549 (W.D. Mo. 1942) (noting a hotel is "only liable for injuries suffered away from the hotel .

. . where the fight has been a continuation of that initiated on the innkeeper . . . property").

> Historically, we have considered three factors when determining whether a duty to exercise reasonable care exists: "the relationship between the parties, the foreseeability of harm, and public policy." *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012). We have not viewed these factors as "three distinct and necessary elements, but rather as considerations employed in a balancing process." *Thompson*, 774 N.W.2d at 834. Ultimately, "whether a duty exists is a policy decision based upon all relevant considerations that guide us to conclude a particular person is entitled to be protected from a particular type of harm." *Id.* (quoting *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 258 (Iowa 1999)).

*Gottschalk*, 893 N.W.2d at 586.

Because the liability imposed upon the innkeeper assumes the ability "to proactively prevent an assault on the guest," *Belyea*, 2 A.3d at 279, we agree with the trial court here that as a matter of law the defendants here cannot be held liable for injuries to guests that occurred off premises by an off-duty employee under these facts. *See McCormick*, 819 N.W.2d at 373 ("Application of the control principle makes sense here from a public policy perspective."). It may not be appropriate to draw a bright line of non-liability for all off-premises acts of a hotel employee who is off-duty, but here the acts were extraneous to the employer's interest, personally motivated, and were not fairly attributable to the hotel business. Moreover, the hotel's general duty to exercise care to their guests and their duty to exercise care in hiring, training, supervision, and retention of their employees does not encompass the risk that their employee would rob and beat hotel guests while off premises and during his off-duty hours,

particularly when his past criminal history only encompassed misdemeanor offenses. We therefore affirm.

**AFFIRMED.**